737 A.2d 724

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Roger Seamon PROCTOR, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 29, 1999.

Decided July 22, 1999.

Reargument denied Sept. 21, 1999.

384

386

William J. Hathaway, Erie, for R. Procter.

Mark Waitlevertch, Meadville, for Commonwealth.

Robert A. Graci, Harrisburg, for Office of Atty. General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal from the denial of post conviction relief in a death penalty case.[1]

On March 20, 1988 appellant was convicted of murder of the first degree, conspiracy to commit murder, robbery, and conspiracy to commit robbery. A unanimous jury sentenced him to death.[2] Post-trial motions were denied, and on October 3,

1. The facts of the case are that appellant and one Deidre Owens traveled to Meadville, Pennsylvania in October, 1985. The pair had no money and they planned to rob an eighty-four year old man whom appellant knew. After gaining entrance to the victim's house, the pair stabbed and robbed him. As the appellant hid behind a mantel, Owens told appellant, "Roger, I'll tell you when to do it. I'll tell you when he comes in." When the victim entered, appellant stabbed him with scissors fifty-seven times to the face, chest, back and side, went through the victim's pockets, and handed the victim's wallet to Owens. The wallet contained approximately $100 and Owens found approximately $40 more in various drawers.

2. The jury found three mitigating circumstances: underprivileged childhood; prior employment and absence of convictions; and influence by another. It also found two aggravating circumstances, which outweighed the mitigating circumstances: that the killing was committed

1988 appellant was sentenced to death for the murder conviction and a prison term of fourteen to twenty-eight years for the other convictions. An appeal was taken to this court, but prior to argument, appellant filed a pro se application for extraordinary relief alleging ineffectiveness of counsel. We remanded the case twice to the trial court, which denied the claims of ineffectiveness. We then affirmed the death sentence on January 16, 1991. *Commonwealth v. Proctor*, 526 Pa. 246, 585 A.2d 454 (1991).

Five years later, appellant filed a pro se motion for post-conviction relief. Counsel was appointed to assist, and the trial court issued four memorandum opinions and orders with regard to the post-conviction proceedings. On January 19, 1998 the trial court issued a final order denying post-conviction relief. This appeal followed.

Appellant's first claim is that trial counsel was ineffective in failing to object to the prosecutor's argument at the penalty phase concerning appellant's co-defendant.

■ In order for appellant to prevail on a post-conviction ineffectiveness claim, he must prove by a preponderance of evidence that the alleged ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). He must also prove "that the underlying claim is of arguable merit, counsel had no reasonable basis for the act or omission in question, and but for counsel's act or omission, there is a reasonable probability that the outcome of the proceeding would have been different." *Commonwealth v. Morris*, 546 Pa. 296, 684 A.2d 1037, 1042 (1996); Accord, *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999)(Standard for evaluating a claim of ineffectiveness of counsel is the same on direct appeal and in a PCRA petition).

■ Appellant's first claim is based on the prosecutor's argument at the penalty phase:

by means of torture, and that the killing was committed during the course of a felony.

And the Commonwealth intends to treat her [Deidre Owens] identical to the way that Roger Proctor is treated. She may not have done the actual stabbing, but there is no question she set the wheels in motion. There is also no question by your verdict, you have already concluded that the defendant was responsible for the death of Gerald Gase. So don't think that one defendant is going to have to pay a higher price than the other. I'm telling you that I'm treating both defendants the same. Once again I would admonish you not to consider as part of your determination regarding the defendant's sentence what will happen to Deidre Owens. She played a role in this and she will have a price to pay.

Appellant asserts that this comment is objectionable because appellant is entitled to individualized sentencing specific to the facts of the case and the character of the defendant, and the prosecutor's remarks deny him that individualized treatment.

We disagree. The essence of what the prosecutor said is that the jury is to disregard any concerns it may have about the other actor and concentrate on this appellant. Both participants will be treated the same. Rather than removing the jury's consideration from the facts of this appellant's participation in the crime, the prosecutor's remarks concentrate their attention on the facts of appellant's case. Since there was no basis for trial counsel to object to the prosecutor's remark, he cannot be said to be ineffective in not objecting, and the claim is without merit.

■ Next appellant argues that counsel was ineffective in failing to object to the prosecution's exercise of a peremptory challenge to strike Olga Bryant, the only black venireperson, from the jury pool. The striking of Ms. Bryant resulted in appellant, who is black, being tried by an all-white jury. The victim in the case was white. Appellant acknowledges that Ms. Bryant was acquainted with the mother of appellant's co-defendant, but he points out that another venireperson, Richard Frontz, who is white, was acquainted with defense counsel and the prosecutor and the arresting officer, but was not stricken. Appellant's claim is that when he has made a prima facie case of race-based discrimination, the PCRA court, pur-

suant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was required to permit the examination of the prosecutor as to the voir dire process.

We agree with appellant's claim that once he has made out a prima facie case of race discrimination in the choosing of jurors, he is entitled to an explanation as to the reason the Commonwealth exercised its peremptory challenges against the excluded black juror.[3] In this case, however, the trial court made no finding that appellant stated a prima facie case of illegal discrimination, nor was such a finding likely, given the fact that the excluded black juror not only knew the mother of the co-defendant but also, she indicated that she was compassionate in her feeling for the co-defendant. In the absence of a prima facie case, counsel was not ineffective in failing to request a race-neutral explanation and the court did not err in failing to conduct an evidentiary hearing. The claim is without merit.

 Appellant's next claim is that counsel was ineffective in failing to move for a mistrial or cautionary instruction based upon the prosecutor's comment about appellant's lack of remorse. The prosecutor stated:

> The other thing that I would ask you to consider in deciding whether or not there are any mitigating circumstances, did the defendant ever tell you, did he ever tell you that he was sorry for what he did, that he wished he had never done that to Gerald Gase. He never did. And that is something that you may take into account in making your decision. And it would be very appropriate if you took that into account.

3. *Batson* states:

> Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some case on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. . . . The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried.
> *Batson*, 476 U.S. at 97–98, 106 S.Ct. 1712.

Appellant concedes that he did not state that he was remorseful, but he argues that his admission of guilt both to police and in his trial testimony is tantamount to a statement of remorse. This argument is without merit. While in some cases a feeling of remorse may serve as an impetus to confess to a crime, confession may be driven by other factors as well, and it cannot be said that confession in and of itself signals that the confessor is remorseful.

In *Commonwealth v. Thompson*, 538 Pa. 297, 648 A.2d 315, 322–23 (1994), this court held that prosecutorial comment on a defendant's remorse is not improper when supported by the record. Since the record plainly reveals that appellant confessed to the crime but made no statement of remorse, the prosecutor's comment was proper.

With respect to the prosecutor's assertion that the jury may take into account the appellant's lack of remorse in deciding whether there are mitigating circumstances, we can discern no error. Mitigating circumstances include, inter alia, "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.C.S. § 9711(e)(8). Since failing to express remorse concerns appellant's character, there was no error in arguing that appellant's failure to express remorse should be considered in determining whether there are mitigating circumstances. Counsel was not ineffective in failing to object to this closing comment of the prosecutor because the comment was not improper. The claim is without merit.[4]

█ Next, appellant asserts that counsel was ineffective in failing to elicit a statement of remorse from appellant. We can discern no reason for trial counsel's failure to elicit such a

---

4. This is not a case in which the appellant failed to testify or in which appellant denied that he killed the victim. Instead, appellant admitted both before and during trial that he killed the victim. And although appellant did not state that he was remorseful, defense counsel argued appellant's remorsefulness to the jury. Thus, the prosecutor's comment did not place appellant in the Catch–22 position of having to be remorseful for a crime he denied committing, and the comment was proper as a response to defense counsel's claim that appellant was remorseful.

statement. However, in order to prevail, appellant must establish that but for counsel's omission, the outcome of the proceeding would have been different. It is not plausible that the outcome would have been any different in a case in which appellant admitted culpability in the crime and when appellant's murderous acts were as heinous as they are. The claim is utterly without merit.

 Appellant's next claim is that counsel was ineffective for failing to present appellant's acceptance of responsibility as a mitigating circumstance under the catch-all provision of the capital sentencing statute, 42 Pa.C.S. § 9711(e)(8), which provides that "[a]ny other evidence of mitigation concerning the character and record of the defendant . . ." may be offered for the jury's consideration. Appellant argues that his disclosure of the location of the murder weapon, his inculpatory testimony at trial, and statements to police constitute an acceptance of responsibility that should have been presented as mitigating character evidence during the sentencing phase. However, as the prosecution points out, when asked on direct examination whether he intended to kill his victim, appellant responded, "No I didn't." Appellant also claimed that he only stabbed the victim between four and five times. The evidence adduced at trial showed that the victim was stabbed fifty-seven times, with wounds to his chest, side, face, and back.

Because appellant never accepted responsibility for the crime he actually committed and for which he was convicted, the underlying claim is not of arguable merit. Even if it were, appellant has not demonstrated that counsel lacked a reasonable basis for this omission. In all probability, defense counsel was hesitant to make an argument for mitigation that would highlight an aggravating factor, viz., that the "offense was committed by means of torture," 42 Pa.C.S. § 9711(d)(8), an aggravating factor that the jury actually found to exist. Since appellant did not accept responsibility for the murder and, furthermore, has not met his burden of proof in establishing the absence of a reasonable basis for counsel's action, the claim is without merit.

■ Appellant's next claim of ineffectiveness is that counsel failed to present as a mitigating circumstance appellant's relatively minor participation in the homicide, again arguing that he only stabbed the victim four or five times. Relatively minor participation in a homicidal act is an enumerated mitigating offense. 42 Pa.C.S. § 9711(e)(7). Appellant further contends that his minor participation, had it been argued, could have served to negate the aggravating circumstance of torture.

Appellant's involvement in the murder was more than minor participation. Appellant was an acquaintance of the victim and identified the victim to his accomplice as a possible target for robbery. Appellant and his accomplice then planned to rob the victim, and two days before the crime, appellant discussed the possibility that they might have to murder him. After gaining entry to the victim's home, appellant discovered a pair of scissors and hid behind a mantel waiting for a signal from his accomplice. Upon hearing the signal, appellant ambushed the victim and began stabbing him, not stopping until the victim had stopped resisting and had fallen to the ground. There is no evidence in the record that appellant's accomplice ever stabbed the victim and appellant himself refused to implicate her regarding the actual murder. Since appellant's participation in the homicidal act was not minor, the underlying claim is without merit and counsel was not ineffective for not proffering this argument.

■ Appellant's next claim is that trial counsel was ineffective for failing to investigate and present a defense of voluntary intoxication. Appellant claims that he advised trial counsel that he had been drinking on the day of the murder, yet counsel made no effort to investigate or corroborate this claim in order to present a defense of voluntary intoxication which might have reduced the degree of murder. 18 Pa.C.S. § 308. He further claims that the PCRA court abused its discretion when it found that the level of alcohol use was insufficient under the law for the purpose of such a defense.

■ To prevail in reducing a higher degree of murder to a lower degree due to intoxication a defendant must prove that he was overwhelmed to the point of losing his faculties and sensibilities so that he could not form the specific intent to kill. *Commonwealth v. Breakiron*, 524 Pa. 282, 571 A.2d 1035, 1041 (1990). In a statement to police, which was played for the jury and made part of the record, appellant made no mention of drinking alcohol or having been intoxicated. In fact, no mention was ever made of alcohol until a PCRA hearing nearly a decade after the crime. Appellant testified at this hearing that he had been drinking heavily before he murdered the victim. However, he also was able to testify in detail to his recollection of the events surrounding the murder. He remembered what time he and his accomplice arrived at the victim's home; he remembered which door they used to enter the home; he remembered how much time was spent in each room; he remembered going into the kitchen, finding the scissors and hiding them in his shirt; he remembered washing his hands after the murder and hiding the scissors so as not to arouse suspicion; and he remembered what time the pair left the house.

At this PCRA hearing, the investigator for the public defender's office testified concerning the statement given by appellant regarding the day of the crime. The investigator testified that appellant related a detailed account of the events that day, never suggested that he could not remember clearly what had happened, and made no mention of alcohol use. The investigator further testified that appellant stated that the reason he killed the victim was to avoid identification. Appellant's trial counsel also testified at this PCRA hearing. Counsel testified that he had discussed appellant's alcohol use at a pretrial meeting and that his notes from the meeting revealed that appellant had stated that he drank two cocktails between six and seven hours before the murder. Finally, a motorist who had given the pair a ride shortly after the murder testified that all three of them were sitting in the front seat of a pickup truck and that he observed nothing unusual about the pair's behavior and no sign of intoxication.

Appellant's clear recollection of the events surrounding the murder and the unimpeached testimony of several witnesses, including his own lawyer, belie appellant's claim that he was not in control of his faculties or sensibilities. The underlying claim is without merit and trial counsel's failure to advance a defense he believed to be without merit is reasonable. It is unlikely that had evidence regarding appellant's consumption of two drinks been introduced that the outcome of the trial would have been different. Having found that counsel's decision not to pursue a futile defense to have been reasonable, we find that the PCRA court did not abuse its discretion when it determined that the two drinks ingested by appellant were not sufficient to support a defense of intoxication.

In a related claim, appellant argues that counsel was ineffective for failing to investigate and raise an alleged head injury to buttress the intoxication defense and as a mitigating factor. Appellant claims that he became an alcohol abuser after suffering a head injury six years prior to the murder. He alleges that because of this injury, he suffered blackouts and underwent a personality change. However, no medical evidence was produced at the PCRA hearing to substantiate this claim, and at the evidentiary hearing on the issue of intoxication, petitioner never claimed he drank to ease his pain.

Furthermore, appellant never alleged a direct link between the purported injury and his criminal behavior, either during the trial or the penalty phase. Indeed, the jury found as a mitigating factor that appellant had been crime-free for the previous fourteen years. Even if appellant had proved that he drank as a result of some injury, appellant informed counsel that on the day of the murder he consumed a total of two drinks. Because the presentation of this evidence would not have changed the outcome of the trial or the penalty phase, counsel was not ineffective in failing to present it. The claim is without merit.

Appellant's argument that he was denied due process by the failure of the PCRA court to keep the record open for

submission of medical records relating to his head injury is without basis. In assessing the effectiveness of counsel as to issues pertaining to the alleged head injury, the PCRA court expressly assumed that the facts posited by appellant were true, i.e., that records substantiating the injury were indeed available. Hence, appellant was not prejudiced by his inability to produce such materials before the record was closed.

 Appellant claims that trial counsel was ineffective for not requesting a change of venue or venire based on allegedly prejudicial pre-trial publicity. In *Commonwealth v. Marinelli*, 547 Pa. 294, 690 A.2d 203, 213 (1997), cert. denied, 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998), we set forth the factors to be considered in assessing such a claim:

> [O]ur inquiry must focus upon whether any juror formed a fixed opinion of the defendant's guilt or innocence as a result of the pre-trial publicity. Pre-trial publicity will be deemed inherently prejudicial where the publicity is sensational, inflammatory, slanted towards conviction rather than factual and objective; revealed that the accused had a criminal record; referred to confessions, admissions or re-enactments of the crime by the accused; or derived from reports from the police and prosecuting officers. However, even if one of these elements exists, a change of venue will not be required where there has been sufficient time between publication and trial for the prejudice to dissipate.

(quoting *Commonwealth v. Paolello*, 542 Pa. 47, 665 A.2d 439, 450 (1995)).

The publicity in this case consisted of seven newspaper articles, all of which were reviewed by the PCRA court and found not to have tainted the jury. Appellant's argument regarding the prejudicial effect of the articles is minimal, and no citations to the allegedly prejudicial portions of the articles are provided. Appellant states only that the "totality" of the publicity served to taint the jury pool and that the news articles included "some reference to a re-enactment of the crime, the revelation of a past criminal record of the co-defendant as well as the circumstances of a 'chase' of the co-

defendants." Examination of the PCRA court's opinion sheds some light on this rather inadequately presented claim. The court reviewed each published article in detail and determined that only a few portions of the articles could even arguably be viewed as sensational or inflammatory, those being the portions to which appellant presumably now refers. Appellant's reference to a reported re-enactment of the crime appears to be nothing more than an allusion to a newspaper report that the victim was stabbed fifty-seven times with a pair of shears during an attempted robbery in his home. This was merely a report of fact; there was no implication that appellant assisted in any manner with a re-enactment of the crime. With regard to the revelation of a past criminal record, a news article stated that the co-defendant was on parole for a prior robbery. As the PCRA court noted, however, this did not concern appellant's prior record, but rather the record of the co-defendant. The only potential for prejudice, therefore, arose indirectly, through appellant's association with the co-defendant. Finally, insofar as the report that there was a "chase" of the co-defendants, the court noted that this implied that there was a "hot pursuit" rather than that, in fact, police simply traced and followed the suspects' movements. The foregoing information, which the court characterized as scant and de minimus, was not deemed to have had any significant effect on the jury.

In short, the court concluded that the articles were largely objective and factually based, with a minimum of sensational or inflammatory content. It found that the articles did not saturate the community, since there were only seven articles published prior to trial. The publications were not made with intense frequency; rather, they were scattered over a period of nearly six months. The first two of the articles did not, in fact, even mention appellant. The court found that the articles were published sufficiently far in advance of trial that there was a "cooling-off" period to negate their impact. In fact, the final article was published almost one month before trial commenced. The PCRA court's analysis was squarely in accord with *Marinelli*, supra, and we perceive no error in its

conclusion that a change of venue or venire would not have been warranted. Counsel was not ineffective, therefore, for failing to request such a change.

Finally, appellant asserts that the PCRA court found that counsel was ineffective with regard to various matters heretofore discussed, namely the failure to challenge a comparison of the co-defendants during argument in the penalty phase as well as the failure to elicit from appellant a statement of remorse during the penalty hearing. Appellant asserts that the court erred in finding that counsel's ineffectiveness caused insufficient prejudice to warrant setting aside the death sentence. Regardless, we found that counsel was not ineffective during the prosecutor's argument comparing the co-defendants, and that appellant was not prejudiced by the lack of a statement of remorse. Appellant's arguments are, therefore, unavailing.

Order affirmed.

Justices ZAPPALA and SAYLOR concur in the result.