773 A.2d 131

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William RIVERA, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 2000.

Decided June 19, 2001.

David Rudenstein, Philadelphia, for William Rivera.

Catherine Marshall, Helen Kane, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Office of the Attorney General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

In this capital case, Appellant William Rivera appeals from the sentence of death imposed by the Court of Common Pleas of Philadelphia County.[1] A jury found Appellant guilty of first-degree murder, two counts of robbery, criminal conspiracy, robbery of a motor vehicle, and possessing an instrument of a crime. Following a penalty hearing, the jury determined

1. Pursuant to 42 Pa.C.S. § 9711(h), this Court has automatic jurisdiction to review the trial court's judgment of a sentence of death.

that the one aggravating factor it found, that Appellant killed the victim while committing a felony,[2] outweighed the one mitigating factor it found, any other evidence of mitigation concerning the character and record of Appellant and the circumstances of his offense.[3] Accordingly, the jury returned a verdict of death, and on March 20, 1998, the trial court formally imposed the death sentence against Appellant.[4] After post-sentence motions were filed and denied by the trial court, Appellant filed this direct appeal. For the reasons that follow, we affirm Appellant's judgment of sentence.

 Although Appellant does not challenge the sufficiency of the evidence, this Court is required in all cases in which the death sentence has been imposed to independently review the record in order to determine whether the Commonwealth has established the elements necessary to sustain a conviction for first-degree murder. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26, 454 A.2d 937, 942 (1982). When reviewing a sufficiency of the evidence claim, we must view the evidence in the light most favorable to the verdict winner, in this case, the Commonwealth, and determine whether the fact-finder could have found every element of the crime beyond a reasonable doubt. *See Commonwealth v. Keaton*, 556 Pa. 442, 455, 729 A.2d 529, 536 (1999). Circumstantial evidence alone can be sufficient to convict a defendant of a crime. *See Commonwealth v. Rios*, 546 Pa. 271, 279, 684 A.2d 1025, 1028 (1996).

 In order to obtain a conviction for first-degree murder, the Commonweal᠎h must prove beyond a reasonable doubt that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the defendant committed the killing, and that the killing was committed with deliberation. *See* 18 Pa.C.S. § 2502(a); *Rios*, 546 Pa. at 280, 684 A.2d at 1030. The use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill.

2. 42 Pa.C.S. § 9711(d)(6).

3. 42 Pa.C.S § 9711(e)(8).

4. Appellant also received 120–240 months incarceration each for the robbery, criminal conspiracy, and robbery of a motor vehicle convictions to be served consecutively to the death sentence.

*See Commonwealth v. Jones,* 542 Pa. 464, 484, 668 A.2d 491, 500 (1995).

█ Here, the record establishes that on the evening of September 25, 1995, Mr. and Mrs. Kumok Kang closed their jewelry store located on North Front Street in Philadelphia. The Kangs exited the store and crossed the street to their parked station wagon. Mrs. Kang was carrying her pocketbook, a small paper bag containing a makeup kit, and an icebox that she used to carry her lunch. Mr. Kang was carrying a manila envelope containing an x-ray. Appellant and his two accomplices, Robert Ortiz–Bonilla and Luis Centeno, observed the Kangs as they approached the station wagon. Believing that the Kangs were transporting money in the manila envelope, the three men decided to rob the couple.

The Kangs traveled their usual route home, down Front Street towards Rising Sun Avenue. Mr. Kang was driving the car, while Mrs. Kang sat on the passenger side. Mr. Kang stopped at a red light at the intersection of Front Street and Rising Sun Avenue. Suddenly, Mrs. Kang heard shattering glass and the sound of a man's voice screaming at her husband to exit the car. Mrs. Kang observed a gun poking through the shattered glass, aiming straight at her husband's chest.

Mrs. Kang then heard two shots fired. After being dragged out to the front of the car, Mr. Kang was shot two more times. Eyewitnesses later identified Appellant as the shooter. Appellant then entered the driver's side of the station wagon, while one accomplice, later identified as co-defendant Robert Ortiz–Bonilla, opened the passenger side door and yelled at Mrs. Kang to exit the car. While the station wagon was in motion, Mrs. Kang exited the car and Ortiz–Bonilla grabbed her pocketbook and then jumped into the moving vehicle. The vehicle then headed north on Rising Sun Avenue. Later that evening, Mr. Kang was pronounced dead at Einstein Hospital. He suffered four gunshot wounds in total, one to his hand and three to the chest.

Appellant and Ortiz–Bonilla abandoned the station wagon in the Hill Creek Housing Projects and divided the $40 found in

Mrs. Kang's pocketbook. The two men split up and met later that evening at the home of Doris Santos, Ortiz–Bonilla's girlfriend at the time. The two men entered the house and requested that she turn on the news. The evening news covered the shooting, showing a picture of the station wagon and also reporting that Mr. Kang had died of the gunshot wounds. After watching the news report, Appellant stated "that's what we did." N.T., 1/30/98, at 67.

The police eventually questioned Appellant about the shooting. On August 10, 1996, Appellant waived his constitutional rights and gave a statement to the police. In that statement, Appellant admitted taking part in the robbery and that he was the shooter that evening. Appellant insisted, however, that the gun accidentally fired while he was struggling with Mr. Kang.

Several eyewitnesses testified at trial. Derek Chapman testified that on the night in question he was with his fiancée, Lissa Woods, when he observed two men on the northbound side of Rising Sun Avenue running towards a station wagon. Mr. Chapman heard two gunshots and then witnessed the victim, Mr. Kang, struggling with the shooter as the shooter dragged him out of the car. After Mr. Kang put his hands up in the air, Mr. Chapman heard another two shots fired. Mr. Chapman then saw a different man, later identified as Ortiz–Bonilla, pull a woman from the passenger side of the same car, and then drive off in the victims' car with the shooter. Lissa Woods, who had previously identified Appellant as the shooter from a photo array, also testified at trial about the events surrounding the shooting.[5]

This evidence was clearly sufficient to support Appellant's conviction for first-degree murder. Although Appellant claims that the shooting was an accident, the evidence clearly shows that the killing was committed with deliberation and with the specific intent to kill. The medical examiner testified that the victim had four bullet wounds: one to the right hand and three to the upper body. Police Officer John Cannon, a

---

**5.** Eric Williams, another eyewitness to the crime, also identified Appellant as the shooter. Eric Williams, however, did not testify at trial.

firearms expert, testified that in order for the gun to be fired, the trigger had to be pulled each time. N.T., 1/30/98, at 47. This evidence is more than sufficient to find that Appellant acted with deliberation and with a specific intent to kill. *See Jones,* 542 Pa. at 484, 668 A.2d at 500 (use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill).

Next, Appellant claims that he is entitled to a new trial because the trial court erred in failing to sever his trial from his co-defendants. In a cursory fashion, he appears to argue that severance was necessary because the accounts of his co-defendants were in conflict. This claim fails.

The decision whether to grant a motion for severance is within the sound discretion of the trial court and will not be overturned absent a manifest abuse of discretion. *See Commonwealth v. Chester,* 526 Pa. 578, 589, 587 A.2d 1367, 1372 (1991). The defendant bears the burden of proving that he was prejudiced by the decision not to sever, and he must show real potential for prejudice rather than mere speculation. *See Commonwealth v. Uderra,* 550 Pa. 389, 399, 706 A.2d 334, 339 (1998); *Commonwealth v. Patterson,* 519 Pa. 190, 197, 546 A.2d 596, 600 (1988). The probability of antagonistic defenses is a factor that trial courts should consider in deciding whether to grant severance, but the claim must be more than bare antagonism. *See Chester,* 526 Pa. at 590, 587 A.2d at 1373. However, when defendants have conflicting versions of what took place, the truth may be more easily determined if all are tried together. *See id.* Where conspiracy is charged, joint trials are advisable. *See id.* at 589, 587 A.2d at 1372.

Contrary to Appellant's assertions, the record reveals that the evidence adduced at trial did not conflict concerning the roles of each defendant. All three defendants, including Appellant, agreed in their statements that Appellant was the shooter. All three men also were in agreement that there was no prior plan to kill Mr. Kang, and that the plan was only to rob the Kangs. Appellant simply fails to support his argument that the accounts of the co-defendants "clearly indicated

that the defendants were on a collision course." Appellant's Brief at 19. Therefore, the trial court did not err in refusing to sever Appellant's trial from that of his co-defendants on this basis.

▆ Appellant next claims that the trial court should have severed his trial from his co-defendants because the admission of his co-defendant's confession violated his confrontation clause rights pursuant to *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). Both co-defendant Centeno's and Ortiz–Bonilla's redacted confessions were admitted at trial, but only Centeno testified at trial.[6] In each redacted confession, Appellant's name was replaced with the term "other guy," which Appellant asserts did not sufficiently comply with the standards for redaction set forth in *Gray*. This claim fails.

Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has a right to confront witnesses against him. *See Portuondo v. Agard*, 529 U.S. 61, 65, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000). In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the U.S. Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his nontestifying co-defendant's facially incriminating confession is introduced at their joint trial, even if the jury is instructed that the confession is only to be considered against the co-defendant.

The U.S. Supreme Court subsequently found in *Gray* that the use of an obvious blank instead of a defendant's name raised similar concerns to those raised in *Bruton*. In *Gray*, two co-defendants were tried jointly and convicted of murder. At trial, the trial court admitted the redacted statement of one of the co-defendants under the following circumstances:

the police detective who read the confession into evidence said the word "deleted" or "deletion" whenever Gray's name or Vanlandingham's name appeared. Immediately after the

6. Since co-defendant Centeno testified at trial, Appellant had the opportunity to cross-examine him. Thus, Appellant's only viable Sixth Amendment claim concerns the admission of co-defendant Ortiz–Bonilla's statement.

police detective read the redacted confession to the jury, the prosecutor asked, "after he gave you that information, you subsequently were able to arrest Mr. Kevin Gray; is that correct?" The officer responded, "That's correct." App. 12. The state also introduced into evidence a written copy of the confession with those two names omitted, leaving in their place blank white spaces separated by commas.

523 U.S. at 188–89, 118 S.Ct. 1151. The U.S. Supreme Court held that this scenario, and those that use similar blank spaces or deletions, raise the same concerns as a confession that specifically refers to a defendant by name. *See id.* The Court concluded that when it is clear from the context of the statement that the blank refers to the defendant, the jury reacts the same way as if the defendant's proper name was used, regardless of the use of a blank. *See id.* However, the Court implied that the use of the term "other guy" would be a permissible form of redaction. *See id.* at 196, 118 S.Ct. 1151.

In *Commonwealth v. Travers,* 564 Pa. 362, 768 A.2d 845 (2001), this Court held that the redaction of a nontestifying co-defendant's confession, which replaced any direct reference to the defendant with the words "other man," when accompanied with the appropriate cautionary charge, sufficiently protected a defendant's confrontation clause rights. We held that this method of redaction not only eliminated the name of the defendant, but also eliminated any suggestion of alteration, and thus, eliminated the incriminating nature of the obvious deletion or blank method of redaction used in *Gray. See Travers,* 564 Pa. at 371–373, 768 A.2d at 850–51.

In the instant case, the trial court replaced Appellant's name for "other guy," which was the form of redaction specifically approved by this Court in *Travers.* Moreover, after the admission of each redacted confession, the trial court instructed the jury that the confessions of each defendant were only to be considered against the confessing defendant. N.T., 1/29/98, at 147, 194; 1/30/98, at 36. The trial court also reminded the jury at the conclusion of trial that it should consider any statements made to the police by a defendant only as evidence against the defendant who made the state-

ment. N.T., 2/2/98, at 102. Thus, Appellant's claim that the admission of his co-defendants' confessions violated his confrontation clause rights under *Gray* fails.

Furthermore, any error in admitting the co-defendants' confessions would amount to no more than harmless error. An error is considered harmless when, in light of the overwhelming evidence of guilt, the error was so insignificant that it could not have contributed to the verdict. *See Commonwealth v. Bond,* 539 Pa. 299, 313, 652 A.2d 308, 314 (1995). Here, the evidence adduced at trial overwhelmingly established Appellant's guilt. Numerous eyewitnesses placed Appellant at the scene of the crime. Two eyewitnesses, Lissa Woods and Eric Williams, both identified Appellant as the shooter. Appellant's two co-defendants agreed that Appellant was the shooter. Even Appellant himself admitted that he and his co-defendants committed the crime, and that he was the shooter that evening. Given this overwhelming evidence of guilt, even if there was an error in admitting the confessions, the error was harmless.

Next, Appellant claims that he is entitled to a new trial because the trial court erred when it instructed the jury on "carjacking" rather than the formal statutory term "robbery of a motor vehicle." In *Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139 (2000), this Court specifically rejected the argument raised by Appellant. There, the Court found nothing inherently prejudicial in the widely used colloquial phrase of "carjacking" as a substitute for its statutory term "robbery of a motor vehicle." *See Spotz,* 562 Pa. at 542, 756 A.2d at 1163. Therefore, the trial court did not err in the instant case when it instructed the jury on "carjacking."

Appellant next claims that the trial court improperly charged the jury on the appropriate weighing process for aggravating and mitigating factors at the penalty phase. This claims also fails.[7]

7. Technically, this claim is waived because counsel failed to make a timely objection to the jury instruction. *See* Pa.R.Crim.P. 1119(b). However, because this is a capital case on direct appeal, we will

The trial court has broad discretion in phrasing jury instructions, and may choose its own wording as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *See Commonwealth v. Chambers,* 546 Pa. 370, 381, 685 A.2d 96, 101 (1996). When reviewing a jury charge, an appellate court must consider the entire charge, not merely isolated phrases or words taken out of context. *See id.* at 382, 685 A.2d at 102.

Under 42 Pa.C.S. § 9711(c)(1)(iv), the sentencing procedure for murder in the first degree requires a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. *See* 42 Pa.C.S. § 9711(c)(1)(iv). If the jury finds otherwise, the verdict must be a sentence of life imprisonment. *See id.*

Appellant alleges that the trial court committed two errors in charging the jury. Appellant first asserts that the trial court erroneously instructed the jury that it must determine whether to impose a sentence of death or a life sentence and then create a conforming verdict slip, rather than first properly instructing the jury on the careful weighing process of mitigating and aggravating circumstances that must occur before determining whether to impose a sentence of life or death. Appellant cites to the following excerpt of the trial court's instruction as misleading:

> If you determine that the sentence is life imprisonment, there are two bases for that. Findings on which a sentence of life imprisonment is based are: You found no aggravating circumstance, or you found that the mitigating circumstances are not outweighed by any aggravating circumstances; in other words, the mitigators are not outweighed

nonetheless review the merits of this claim pursuant to the relaxed waiver rule. *See Commonwealth v. Fletcher,* 561 Pa. 266, 284, 750 A.2d 261, 270 (2000), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000).

by any aggravating circumstances, the mitigators went [sic] out over any aggravators.

N.T., 2/5/98, at 76.

The trial court, however, had previously charged the jury that:

> Your verdict must be a sentence of death if you unanimously find, that is if all of you find, at least one aggravating circumstance and no mitigating circumstance, or if you all agree that any aggravating circumstance that you have all found outweighs any mitigating circumstances that any one of you may find, and I'll go through this a couple different times a couple different ways. These are the only two situations in which the death penalty can be returned. If you do not all unanimously agree on one or the other of these two findings, then the only verdict that you may return is a verdict of life imprisonment.

N.T., 2/5/98, at 72. This latter instruction mirrors the balancing requirements for aggravating and mitigating factors set forth by 42 Pa.C.S. § 9711(c)(1)(iv). Thus, contrary to Appellant's assertions, the trial court charge, when reviewed in its entirety, accurately instructed the jury on the appropriate weighing process for aggravating and mitigating factors.

■ Appellant also claims that the trial court improperly switched the burden of proof by instructing the jury that it could only impose a life sentence if the "mitigators went [sic][8] out over any aggravators." Appellant asserts that the above instruction implies that in order to receive a life sentence, the defendant bears the burden of proving that the mitigating factors outweigh the aggravating factors. This argument lacks merit. The portion of the instruction that Appellant asserts as erroneous is simply taken out of context. As noted above, when read in its entirety, the trial court clearly, adequately and accurately instructed the jury on the appropriate weighing process for aggravating and mitigating factors.

8. Appellant asserts that the word "went" is a typographical error and that the correct word is "won." After reading the entire section of the jury charge, it appears that Appellant is correct.

*See Chambers,* 546 Pa. at 381, 685 A.2d at 101. Accordingly, this claim fails.

Next, Appellant makes two claims regarding the ineffective assistance of counsel at the penalty phase of his trial. In order to establish a claim of ineffective assistance of counsel, a defendant must show that: 1) the underlying claim is of arguable merit; 2) counsel had no reasonable strategic basis for his action or inaction; and 3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Kimball,* 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). Counsel cannot be found ineffective for failing to raise a meritless claim. *See Commonwealth v. Pierce,* 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). Moreover, a court will not find counsel to be ineffective if the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest. *See id.* at 524, 645 A.2d at 194.

Appellant first asserts that trial counsel improperly conceded that the murder occurred during the commission of a felony, which the jury subsequently found to be an aggravating factor pursuant to 42 Pa.C.S. § 9711(d)(6).[9] This claim fails.

In *Commonwealth v. Williams,* 537 Pa. 1, 640 A.2d 1251 (1994), the defendant was convicted of first-degree murder, robbery, theft by unlawful taking or disposition and receiving stolen property. At the penalty phase, trial counsel conceded that, by virtue of the guilty verdict for robbery, the aggravating factor of 42 Pa.C.S. § 9711(d)(6) had been met. *See id.* 537 Pa. at 30, 640 A.2d at 1266. Instead of arguing that the murder did not occur during the commission of a felony, the defendant's trial counsel in *Williams* argued that the several mitigating factors outweighed the aggravating factor. *See id.* On appeal, this Court found that "it could not be said that such a strategy had no reasonable basis in effectuating his client's interests." *Id.*

9. 42 Pa.C.S. § 9711(d)(6) provides that "the defendant committed a killing while in the perpetration of a felony."

Here, the jury convicted Appellant of two counts of robbery, criminal conspiracy, robbery of a motor vehicle, and possessing an instrument of a crime.[10] In light of these convictions, trial counsel chose not to argue that 42 Pa.C.S. § 9711(d)(6) was not applicable. Instead, trial counsel focused on discrediting the Commonwealth's two other aggravating factors and arguing that the jury should find the two mitigating factors.[11] Like in *Williams,* it cannot be said that this strategy was unreasonable and therefore, this claim fails.

Appellant also asserts that counsel was ineffective for failing to object to the prosecutor's reference in her closing argument to Appellant's lack of remorse. This claim also fails.

At the penalty phase of trial, where the presumption of innocence is no longer applicable, the Commonwealth is permitted to employ oratorical flair and impassioned argument for the death sentence. *See Commonwealth v. Baker,* 531 Pa. 541, 558, 614 A.2d 663, 671–72 (1992). The Commonwealth may also argue at the penalty phase that a defendant showed no sympathy or remorse, so long as it is not an extensive tirade. *See Commonwealth v. Proctor,* 558 Pa. 382, 390, 737 A.2d 724, 728 (1999); *Commonwealth v. Travaglia,* 502 Pa. 474, 499, 467 A.2d 288, 301 (1983).

Here, the record shows that although the prosecutor briefly commented on Appellant's lack of remorse, this brief comment can in no way be considered an extensive tirade. *See Commonwealth v. Travaglia,* 502 Pa. at 499, 467 A.2d at 301. Moreover, Appellant's counsel actually responded to the prosecutor's comment in his own closing argument, stating:

The district attorney indicated that Mr. Rivera has never demonstrated any remorse in this case, and *that's not true,*

10. Robbery, criminal conspiracy, and robbery of a motor vehicle are felonies. *See* 18 Pa.C.S. § 3701(a)(1)(ii), 18 Pa.C.S. § 903, 18 Pa.C.S. § 3702(a). Possessing an instrument of a crime is a misdemeanor of the first degree. *See* 18 Pa.C.S. § 907.

11. Moreover, rather than lose credibility in the eyes of the jury, trial counsel maintained the same strategy throughout the guilt and penalty phase of trial, a theory that this crime was felony murder rather than murder in the first degree. It cannot be said that consistency in trial strategy has no reasonable basis in effectuating Appellant's interests.

and you've already heard that that's not true, because the Commonwealth moved into evidence Mr. Rivera's statement, what Mr. Rivera said, and so did the other co-defendants say, we saw the yellow envelope, we thought there was money, we wanted the money in the envelope.[12]

When William Rivera got out of that car, took out that gun, he didn't know Mr. Kang, he did not want to kill Mr. Kang, he wanted the envelope.

N.T., 2/5/98, at 61 (emphasis added). Given these circumstances, trial counsel was not ineffective for failing to object to the prosecutor's brief comment on Appellant's lack of remorse.

█ Appellant also appears to claim that trial counsel was ineffective for failing to ask for a jury charge instructing the jury that Appellant was not required to testify at the penalty phase of trial. This claim also fails.

At the conclusion of the guilt phase of Appellant's trial, the trial court specifically instructed the jury that:

A person accused of a crime is not required to testify, or present evidence or prove anything in his or her own defense. Each defendant has an absolute right, founded on the constitution, to remain silent in the face of criminal charges. In this instant case, Mr. Rivera and Mr. Bonilla chose not to testify. You must not draw any inference of guilt whatsoever from the fact that Mr. Rivera and Mr. Bonilla chose not to testify in this case.

N.T., 2/2/98, at 91. In light of this earlier jury instruction, Appellant has failed to prove, as is his burden, how a later "no adverse inference" instruction at the penalty phase would have affected the jury's imposition of the death sentence. In fact, Appellant fails to make any argument at all regarding how he

---

12. In his statement to the police, Appellant stated:

QUESTION: William, is there anything else that you would like to add to your statement.

ANSWER: Just that I didn't mean to hurt anyone. Things didn't happen the way we planned it, I was just trying to protect myself. I was begging the Chinese guy to let go of the gun, but he wouldn't. He was probably scared just like I was. I am really sorry that things happened like that.

N.T., 2/5/98, at 61.

was prejudiced by the absence of such an instruction at the penalty phase. *See Kimball,* 555 Pa. at 312, 724 A.2d at 333 (to prove ineffectiveness, Appellant must show to a reasonable probability that but for trial counsel's ineffectiveness the outcome of the proceedings would have been different). Appellant also fails to offer any support for his bald assertion that "there was certainly no reason whatsoever for penalty counsel to have failed to ask for a no adverse inference instruction." Appellant's Brief at 19. Contrary to Appellant's assertion, a second no adverse inference instruction could have unfavorably drawn more attention to the fact that Appellant did not testify at the penalty phase of trial. Thus, since Appellant has also failed to establish that counsel acted unreasonably, this claim fails to provide Appellant with a basis for relief.

Alternatively, Appellant argues that the trial court should *sua sponte* give an instruction that a defendant is not required to testify at the penalty phase whenever the Commonwealth refers to a defendant's lack of remorse. In support of his argument, Appellant cites to *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983). In *Travaglia,* this Court actually held that a jury could consider a defendant's apparent lack of remorse during the penalty phase of a trial. *See id.* at 500, 467 A.2d at 301. Although the trial court in *Travaglia* instructed the penalty phase jury that the defendant was not obligated to testify, and that no adverse inference should be drawn from his failure to testify, this instruction was not decisive to the Court's decision that a defendant's lack of remorse is a proper factor for consideration during the penalty phase of trial. Certainly, *Travaglia* does not support Appellant's position that when the prosecution comments on a defendant's lack of remorse at the penalty phase, the trial court must *sua sponte* offer an instruction that a defendant has no obligation to testify.

▬ Moreover, in *Commonwealth v. Edwards,* 535 Pa. 575, 579–80, 637 A.2d 259, 261 (1993), this Court held that it would be per se reversible error for a judge to instruct the jury on a defendant's right not to testify when the defendant has re-

quested that no such instruction be given. We cited the rationale for this rule as:

> The most sensible of the various judicial approaches is to allow the defendant to decide whether the instruction should be given in any particular case. The desirability of the instruction is a matter of trial strategy, and will therefore vary from case to case. The purpose of the instruction is to prevent the jury from considering the defendant's silence as evidence of guilt, and the defendant himself will normally be in the best position to decide whether or not the giving of the instruction will serve this end.

*Id.* at 579, 637 A.2d at 260–61. Adoption of the rule suggested by Appellant would, in effect, be antithetical to our holding in *Edwards* and thus, we decline to hold that a trial court must *sua sponte* instruct the jury that a defendant is not required to testify at the penalty phase whenever the Commonwealth refers to a defendant's lack of remorse.

Having concluded that Appellant's claims for relief are without merit, we must, in compliance with our statutory duty pursuant to 42 Pa.C.S. § 9711(h)(3), affirm the sentence of death unless we determine that the sentence was the product of passion, prejudice or any other arbitrary factor; or the evidence fails to support the finding of at least one aggravating factor. 42 Pa.C.S. § 9711(h)(3). Upon review of the record, we conclude that the sentence of death was not the product of passion, prejudice or any other arbitrary factor. Rather, it was based upon evidence properly admitted at trial. We also conclude that the evidence was sufficient to support the finding of at least one aggravating factor, that Appellant committed a killing while in the perpetration of a felony. *See* 42 Pa.C.S. § 9711(d)(6). Accordingly, we affirm the conviction of murder in the first degree and judgments of sentence.[13]

---

13. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i)(Supp.1997).