J-A05044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DANIEL RILEY, | |
| Appellant | No. 212 EDA 2015 |

Appeal from the Judgment of Sentence September 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006088-2012

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED APRIL 26, 2016**

This is an appeal from the judgment of sentence imposed after a jury convicted Appellant of first-degree murder, robbery, conspiracy to commit robbery, carrying a firearm on a public street in Philadelphia, and possessing an instrument of crime.[1]

The trial court summarized the pertinent facts and procedural history as follows:

> On September 29, 2011, into the early morning hours of September 30, 2011, [the victim] met with friends at J's Big Shot Lounge, a bar at the corner of Stenton Avenue and Narragansett Street in Philadelphia.  [The victim] had recently purchased a Buick LeSabre, which he parked on the street near the bar.

---

[1] **See** 18 Pa.C.S.A. §§ 2502, 3701, 903, 6108, and 907, respectively.

*Former Justice specially assigned to the Superior Court.

While [the victim] was in the bar, [Appellant] was on the street outside that bar with [Thomas] Robinson, Terell Toson, Derick Toliver, and Markese Martin. [Appellant] stated that he wanted to rob [the victim] who was known by the group to sell drugs in that area. Each member of the group agreed to rob [the victim]. While [the victim] was still inside the bar, [Appellant] left the scene in order to obtain a firearm. Before leaving, [Appellant] directed Robinson and Toson to break the window of [the victim's] car, in order to delay [the victim] should he try to leave the bar before [Appellant] returned. Toson attempted to break the car window with a rock, but was unsuccessful. Robinson then took a larger rock and threw it through the car window, breaking it. Robinson and Toson then walked away from the car without entering it or taking anything from it. [Appellant] returned with a gun shortly after the window was broken. [Appellant] and Robinson stood near the bar awaiting [the victim's] exit, while Toson, Martin, and Toliver stayed down the street.

[The victim] stayed in the bar until approximately 3:15 a.m. Upon leaving, he was accompanied by his friend[,] Warren Roane, the bar manager[,] Julie Fluellen, the barmaid Mae, and the victim's ex-girlfriend, Missy. They were going to go eat breakfast together after the bar closed.

After leaving the bar, [the victim] went to his car with Mae, where he was confronted by [Appellant] and Robinson. [Appellant] ordered [the victim] to "give it up" while pointing his gun at [the victim's] chest. [The victim] told [Appellant] "you goin' have to shoot me," and pushed the gun away. [Appellant] then fired multiple shots at [the victim] as [the victim] began to flee back towards the bar. [Appellant] and Robinson then fled down Narragansett Street, away from the bar. Surveillance cameras captured the entire incident on video.

[The victim] was shot in the left side and leg. [The victim] told Roane he knew who shot him, though he never stated a name before dying. [The victim] and his friends flagged down a police vehicle that was in the area, which transported him to Einstein Hospital. [The victim] did not regain consciousness while in the hospital and eventually died on October 8, 2011.

Police went to interview [Appellant's] girlfriend on March 13, 2012, and saw [Appellant] in the home. [Appellant] refused to come out of the kitchen and officers secured him. When

exiting the home, [Appellant] attempted to flee but was restrained by police. Initially, [Appellant] gave an alias at the time of his arrest. However, upon seeing his name and picture displayed on the computer in the police car, [Appellant] stated, "You guys got me. I'm going away for a long time." When asked why [Appellant] thought he was going away for a long time, [Appellant] replied, "I killed someone."

Trial Court Opinion, 3/26/15, at 2-4 (citations and footnotes omitted).[2]

Appellant and Robinson were tried together. Appellant was found guilty of the aforementioned crimes, and the trial court immediately sentenced him to mandatory life in prison for his first-degree murder conviction.[3] This timely appeal follows. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

1. Did the [trial] court err by allowing a co-defendant's confession to be introduced at trial where it implicated [Appellant] in violation of [Appellant's] Sixth Amendment right of confrontation?

Appellant's Brief at 4.

Appellant's claim involves application of the United States Supreme Court's decision in ***Bruton v. U.S.***, 391 U.S. 123 (1968), to Robinson's

---

[2] Prior to trial, Appellant successfully sought suppression of his second statement to the police. N.T., 6/26/13, at 5.

[3] Robinson was convicted on all charges, including second-degree murder. The trial court immediately sentenced him to the mandatory life in prison. Robinson filed an appeal, which is docketed at 269 EDA 2015 and shall be addressed in a separate decision.

- 3 -

statement to police that was introduced during their joint trial. Our Supreme Court has recently summarized:

> The general rule in a joint trial of co-defendants is that the law presumes that the jury can follow an appropriate instruction, which explains that evidence introduced with respect to only one defendant cannot be considered against other defendants. **Bruton** departed from this salutary general rule only by concluding that where there are powerfully incriminating statements made against a non-testifying co-defendant who stands side by side with the accused, such statements can be devastating as well as inherently suspect when they shift blame to the accused. Following **Bruton**, the U.S. Supreme Court has approved redaction and a limiting instruction as a means of eliminating the possible spillover prejudice arising from the admission of a non-testifying co-defendant's confession against that co-defendant at a joint trial. **Bruton** and its progeny establish Sixth Amendment norms governing state criminal trials, and this Court has had ample opportunity to consider and apply the precepts. In our implementation of this federal law, we have explained that the challenged co-defendant's statement must be incriminating on its face and that redactions involving the substitution of neutral pronouns (such as ["he," "him" or "the other guy"]) instead of names or other obvious methods of deletion, do not obviously identify the other co-defendant's.

**Commonwealth v. Daniels**, 104 A.3d 267, 294 (Pa. 2014).

Appellant concedes that the trial court implemented Pennsylvania's application of **Bruton**, but nevertheless argues that "the use of phrase, 'the other guy' was a 'similarly obvious' symbol of redaction that alerted the jury to the fact that Robinson has actually implicated [Appellant] in [the victim's] death." Appellant's Brief at 8.[4] In support of this claim, Appellant relies

---

[4] The trial court also gave the appropriate limiting instruction regarding Robinson's statement. **See** N.T., 9/15/14, at 165-66.
*(Footnote Continued Next Page)*

- 4 -

upon the federal decision of the Third Circuit Untied States Court of Appeals in **Vazquez v. Wilson**, 550 F.3d 270 (3ʳᵈ Cir. 2008).

However, in **Daniels**, **supra**, where the two appellees raised similar claims, our Supreme Court held:

> We need not engage the parties' reliance upon decisional law from other jurisdictions, including the Third Circuit U.S. Court of Appeals, because those cases do not control, and there is ample decisional law from this Court following and applying **Bruton**.

**Daniels**, 104 A.3d at 294 (citation omitted).  Thus, the **Daniels**' decision renders Appellant's claim without merit.[5]

Even if a **Bruton** violation occurred, our review of the record supports the Commonwealth's contention that the other properly admitted evidence of Appellant's guilt was overwhelming.  Two of Appellant's other cohorts identified Appellant as the shooter from the incident as depicted on video surveillance.  **See** N.T., 9/9/14, at 218-19 (Toson); N.T., 9/11/14, at 212 (Toliver).  In addition, Appellant's actions following the shooting, including evading police and giving an alias, evinced his consciousness of

_(Footnote Continued)_ ───────────────────

[5] In fact, Appellant concedes that our Supreme Court rejected **Vazquez** in **Daniels**.  Appellant's Brief at 9, n.1.  Nevertheless, he "maintains that the [**Vazquez**] approach is the proper standard under federal law, and specifically reserves the right to pursue the **Bruton** violation in this case in future federal proceedings on the basis that his Sixth Amendment rights were violated by the introduction of Robinson's confession."  **Id.**

guilt. Therefore, even if any error occurred in redacting Robinson's statement, it would be harmless. *See*, *e.g.*, *Commonwealth v. Rivera*, 773 A.2d 131, 138-39 (Pa. 2001) (holding that, even assuming admission of co-defendants' statements violated *Bruton*, any error was harmless in light of the overwhelming evidence of the defendant's guilt).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2016