J-S51028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RANDY DIAZ | |
| Appellant | No. 3204 EDA 2014 |

Appeal from the Judgment of Sentence October 9, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011777-2013

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:              **FILED AUGUST 26, 2015**

Randy Diaz appeals from the judgment of sentence, imposed in the Philadelphia Court of Common Pleas, following his convictions for murder in the first degree,[1] conspiracy,[2] carrying a firearm without a license,[3] carrying firearm without a license on the streets of Philadelphia,[4] and possession of an instrument of crime ("PIC").  After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 903.

[3] 18 Pa.C.S. § 6106(a)(1).

[4] 18 Pa.C.S. § 6108.

The underlying facts are as follows. On the evening of December 15, 2011, Diaz, Christopher Martinez and Alex Torres were together in a schoolyard parking lot with Amanda Cooper and Marcus Jones. Torres and Diaz were discussing that they had a problem with Juan Cruz because he owed Torres money for dealing drugs. Torres, who weighed over 400 pounds, asked Diaz to murder Cruz for him because Torres was too big and could not move fast enough to murder Cruz himself. Diaz agreed and Torres provided him with a gun.[5]

Torres and some friends, including Jones, drove ahead to look out for the police, while Martinez, who was driving Diaz's black BMW with Diaz in the passenger's seat, followed behind them. When they reached Coral Street, near Frankford Avenue, Diaz told Martinez to stop but to keep the car running. Diaz took the gun, exited the vehicle and walked up the block. Martinez heard four gunshots and a few seconds later Diaz ran back to the car, jumped in, and yelled for Martinez to drive. Martinez and Diaz drove to Martinez's house, where Diaz left Martinez.

Cooper testified that prior to the shooting she heard Torres tell Diaz "you better shoot him before he shoots you," and saw Martinez and Diaz drive around the block in Diaz's car. Cooper went into her house and came out five or ten minutes later, observing that Diaz's car was parked with the

---

[5] Martinez described the gun as a semiautomatic "Glock 9."

engine running at the intersection of Coral and Rush Streets. Cooper then saw Diaz walk out of sight and heard about four to five gunshots from the area nearby. Cooper then saw Diaz run down the street holding his pocket and get into the passenger seat of his BMW. She watched Martinez drive away and went toward the area where the gunshots were fired. She saw Cruz, who was injured.

That same evening, Jones heard Diaz say that Cruz owed him money and that if he did not pay Diaz, he was going to kill Cruz. Jones drove away with Torres, who later received a phone call informing him that Cruz had been shot.

On December 15, 2011, at about 6:45 p.m., Police Officer Curt McKee received a radio call, and was dispatched to 2036 East Auburn Street, where he found Cruz lying on the ground suffering from multiple gunshot wounds. Officer McKee placed Cruz into his vehicle and transported him to a nearby hospital. *Id.* at 76-77.

At the scene of the shooting, Detective Gina Chestang recovered five nine-millimeter cartridge casings and two projectile fragments from the 2800 Block of North Coral Street. According to Officer Raymond Andrejczak, an expert in ballistics, all five of the cartridge casings recovered from the scene were fired from the same unrecovered firearm. Both projectiles recovered from Cruz's body were nine millimeters.

On December 18, 2011, at about 10:40 p.m., Police Officer Jill Kerstetter came into contact with Diaz, who was exiting his black BMW.

- 3 -

Diaz identified himself as Randy Marshal to Office Kerstetter. Office Kerstetter recovered a Daily News article dated December 16, 2011, regarding the shooting of Cruz, in Diaz's pocket, and also recovered thirty-three packets of heroin and cocaine.

On January 12, 2012, at 12:29 a.m., Cruz died of his injuries. According to the Medical Examiner, Cruz's cause of death was multiple gunshot wounds suffered on December 15, 2011.[6]

Trial began on October 6, 2014, and the jury returned its verdict on October 9, 2014, finding Diaz guilty of the aforementioned offenses. The Honorable Barbara A. McDermott sentenced Diaz to an aggregate term of life imprisonment without the possibility of parole.

Diaz filed a post-sentence motion on October 14, 2014, asserting that the verdict was against the weight of the evidence and that the court erred by admitting evidence related to his involvement in a home invasion prior to the date of the murder for which he was on trial. The court denied the motion the following day.

Diaz filed a timely notice of appeal on November 13, 2014. After receiving an extension, Diaz filed a statement of errors complained of on

---

[6] Cruz suffered four gunshot wounds, one to his chest, which hit his heart, lungs, and spleen, one to his right shoulder, one to his right thigh, and one to his right calf.

appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued its Rule 1925(a) opinion on January 12, 2015.

On appeal to this Court, Diaz raises the following issues for our review:

1. Is [Diaz] entitled to an arrest of judgment on all charges, where the verdict was not supported by sufficient evidence and where the Commonwealth did not prove its case beyond a reasonable doubt?

2. Is [Diaz] entitled to a new trial as the verdict is against the greater weight of the evidence?

3. Is [Diaz] entitled to a new trial as a result of the trial court's error in admitting certain evidence pursuant to [Pennsylvania] Rule [of Evidence] 404(b), but where the evidence was not admissible pursuant to that Rule nor admissible because of Rule 401 and Rule 403?

Appellant's Brief, at 3.

Diaz first avers that there was insufficient evidence to establish that he committed any of the crimes. Diaz asserts that, while he may have been present at or near the scene of the crime, the Commonwealth failed to establish that he was the shooter or that he acted with premeditation or the specific intent to kill. Diaz contends that because there was no eyewitness testimony, no confession and no physical evidence connecting him to the offense, the court lacked sufficient evidence to show he was the shooter or had the specific intent to kill Diaz.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences

therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Randall*, 758 A.2d 669, 674 (Pa. Super. 2000). Moreover, "wholly circumstantial evidence" may support a conviction. *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000).

"A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). An intentional killing is a "killing by means of poison, or by lying in wait, or any other kind of willful, deliberate, and premeditated killing." 18 Pa.C.S. § 2502(d). Evidence is sufficient to sustain a conviction for first-degree murder when the Commonwealth establishes that: (1) a human being was unlawfully killed; (2) the accused is responsible for the killing; and (3) the accused acted with specific intent. *Commonwealth v. Chambers*, 980 A.2d 35, 44 (Pa. 2009). The Commonwealth may establish that the defendant intentionally killed the victim wholly through circumstantial evidence. *Id.* at 44 (citing *Commonwealth v. Rivera*, 773 A.2d 131, 135 (Pa. 2001)). Malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Thomas*, 54 A.3d 332, 335-36 (Pa. 2012).

Diaz asserts that the evidence was insufficient to establish he was a principal actor, accomplice or conspirator in the murder. However, there were three eyewitnesses (Jones, Martinez, and Cooper), who observed Diaz

explicitly agree to murder Cruz over a drug debt Cruz owed to Torres. N.T. Trial, 10/7/14, at 137, 141, 230; N.T. Trial, 10/8/14, at 35-37, 167. Martinez testified that he assisted in the plan by driving Diaz, waiting in the car while Diaz shot Cruz, and then driving Diaz to safety afterwards. *Id.* at 138-140. Martinez's testimony, if believed by the fact-finder, itself provided sufficient proof that Diaz acted as a principal in the conspiracy to murder Cruz and possessed the specific intent to do so. *See Commonwealth v. Wienckowski*, 537 A.2d 866, 870 (Pa. Super. 1988) (the uncorroborated testimony of a prosecution witness can be sufficient to convict if the trier of facts finds the witness to be credible); *Commonwealth v. Boone*, 429 A.2d 689, 691 (Pa. Super. 1981) (the testimony of one witness may suffice to establish the identification of the accused").[7]

Additionally, the physical evidence at the scene of the shooting was consistent with witnesses' testimony. Martinez and Cooper testified that Diaz fired four or five shots. At the scene, the police recovered five nine-millimeter fired cartridge casings, which had all been fired by the same gun. Cruz suffered four gunshot wounds, and two projectiles removed from his

---

[7] Martinez's testimony was corroborated by additional evidence, including the testimony of Cooper, who overheard the conversation between Diaz and Torres about murdering Cruz, heard gunshots, saw Diaz's black BMW drive away, and found Cruz lying in the street. Jones also was present and testified that he overheard Diaz discussing Cruz's drug debt and plans to kill him. Jones left the parking lot with Torres, who later received a phone call informing him Cruz had been shot.

body were nine-millimeters. N.T. Trial, 10/7/14, at 89, 99-101, 104, 212-14, 218. Accordingly, the Commonwealth established Diaz's guilt beyond a reasonable doubt.

Next, Diaz argues he must be awarded a new trial because the verdict was against the weight of the evidence, and because the jury had to engage "in speculation, conjecture and surmise in reaching its verdict," Appellant's Brief, at 6, due to the lack of sufficient evidence connecting him to the offenses. Diaz contends that, without a confession, physical evidence tying him to the crime, or an eyewitness who saw him commit the crime, "the jury went too far in finding [him] guilty and had to engage in rank speculation to reach [its] verdict." *Id.* at 10.

Weight of the evidence and sufficiency of the evidence are discrete inquiries. An argument that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002). An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005) (citations omitted). *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). A verdict is against the weight of the evidence only where the Commonwealth's evidence is so fundamentally inconsistent, unreliable, or tenuous that it shocks one's

sense of justice to imagine that a factfinder could have credited it and used it to convict someone. ***Commonwealth v. Widmer***, 744 A.2d 745 (Pa. 2000).

Here, Diaz failed to develop his weight of the evidence argument and cited no relevant case law to discuss or support his claim. Diaz only relies on case law that fails to distinguish his argument from his sufficiency of the evidence claim. ***See Commonwealth v. McClendon***, 874 A.2d 1223, 1234 (Pa. Super. 2005) (claim waived where appellant fails to provide relevant case law and full discussion); ***Commonwealth v. Sullivan***, 864 A.2d 1246 (Pa. Super. 2004) (weight claim waived where appellant argued weight and sufficiency but did not distinguish between them).

Moreover, Diaz has failed to challenge whether the trial court abused its discretion in denying his post trial motion raising a weight of the evidence claim.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the

evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted).

Because Diaz has failed to establish that the trial court abused its discretion in denying his weight of the evidence claim, he is not entitled to relief.

Lastly, Diaz argues that he should be awarded a new trial because the trial court erred when it admitted evidence that he had drugs[8] in his possession when he was arrested several days after the shooting. He asserts that this evidence was irrelevant to the issue of whether he shot Cruz and thus should not have been admitted.

_____

[8] Officer Kerstetter found him in possession of twenty-two blue tinted Ziploc packets of cocaine and eleven heat-sealed packets of heroin. Appellant's Brief, at 10-12.

- 10 -

The admissibility of evidence is a matter addressed solely to the discretion of the trial court, and may not be reversed absent an abuse of that discretion. ***Commonwealth v. Begley***, 780 A.2d 605, 620 (Pa. 2001). An abuse of discretion is "not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." ***Commonwealth v. Busanet***, 817 A.2d 1060, 1076 (Pa. 2002).

Pursuant to Rule of Evidence 404(b)(2), evidence of other crimes may be admitted as  proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

In Diaz's Rule 1925(b) statement, Diaz vaguely asserted that the trial court erred in "permitting extraneous 404(b) evidence in [sic] which was not particularly relevant and, if relevant, was far outweighed by unfair prejudice. Moreover, the defense was prejudiced by a lack of fair notice as to the issue." Statement of Errors Complained of on Appeal, 12/31/14, at 2. At trial, Diaz made multiple evidentiary challenges pursuant to Rule 404(b). In the trial court opinion, Judge McDermott had to speculate as to which of the rulings Diaz wished to challenge on appeal, and addressed the admission of

Diaz's firearm possession into evidence.[9] However, in Diaz's appellate brief, he complains of the admission of evidence that he possessed drugs at the time of his arrest that the court should have excluded. Accordingly, the trial court was deprived of any opportunity to respond to the issue Diaz raises before us. Because Diaz did not properly preserve his claim, it is waived.

Even if Diaz had properly preserved his evidentiary challenge, the claim is meritless. Evidence of other criminal activity is admissible to prove an accused's motive for his actions, and to explain the history of the case. *See* Pa.R.E. 404(b)(2); *Commonwealth v. Reid*, 811 A.2d 530, 550 (Pa. 2002) (evidence admissible when it tends to prove, *inter alia*, motive, as well as for the purpose of demonstrating the chain or sequence of events which formed the history of the case and the natural development of the facts); *Commonwealth v. Williams*, 936 A.2d 12, 31 (Pa. 2007) ("this Court has recognized a *res gestae* exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context or complete story of the events surrounding a crime").

Evidence must be "unduly prejudicial" to warrant preclusion, not merely "harmful to the defendant." *Commonwealth v. Hairston*, 84 A.3d

---

[9] The only clue Diaz offered in his Rule 1925(b) Statement was his reference to "a lack of fair notice," which appeared to refer to evidence that he was observed in possession of a semi-automatic firearm several weeks before the shooting. Because of that vague clue, the trial court assumed in its opinion that the firearms evidence was at issue. Trial Court Opinion, 1/12/15, at 4-8.

- 12 -

657, 666 (Pa. 2014) (internal citations omitted). Undue prejudice "is not simply prejudice in the sense that [the defendant] will be linked to the crime which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence." **Commonwealth v. Lark**, 543 A.2d 491, 499 (Pa. 1988) (emphasis omitted). **See also Commonwealth v. Rigler**, 412 A.2d 846, 852 (Pa. 1980) ("all of the prosecution's evidence is intended to 'prejudice' the jury, and simply because it is damaging to the defense is no reason to exclude the evidence").

Here, evidence of Diaz's involvement with drug dealing was relevant to his motive for killing Cruz. As the testimony established, all three witnesses overheard Diaz discussing with Torres how Cruz owed Torres drug money. N.T. Trial, 10/7/14, at 35-38; 76-78; 230-50. Additionally, Diaz never disputed that he was a drug dealer. There is no reason to believe that the testimony about Diaz's drug possession so prejudiced the jury that it was prevented from making a fair determination as to whether or not Diaz was guilty of the offenses charged. Accordingly, Diaz's claim does not entitle him to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2015