J-S34011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK JAMES FORTNEY | : | |
| | : | |
| Appellant | : | No. 1393 WDA 2017 |

Appeal from the Judgment of Sentence August 14, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0004128-2016

BEFORE:   BOWES, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                **FILED OCTOBER 22, 2018**

Patrick James Fortney appeals from the judgment of sentence of ninety to 180 months incarceration imposed following his jury trial convictions for, *inter alia*, burglary.  We affirm on the basis of the thoroughly well-reasoned Pa.R.A.P. 1925(a) opinion prepared by the Honorable John Garhart, which cogently sets forth why Appellant's claims fail.

This appeal follows Appellant's convictions for four counts of burglary, which occurred at four separate residences over the period of March 7, 2016, through March 28, 2016.   The Commonwealth's case was largely circumstantial, and relied, in part, on the admission of a separate burglary that occurred in Ashtabula County in Ohio, just over the Pennsylvania border. Appellant's two claims on appeal attack the sufficiency of the evidence supporting those convictions, and the trial court's decision to admit the other crimes evidence.  Appellant's brief at 7-12.  After reviewing the certified record

_____

* Retired Senior Judge assigned to the Superior Court.

and Appellant's brief, we affirm on the basis of the trial court's twenty-nine page opinion, entered on November 21, 2017 and which we adopt as our own.

Regarding the sufficiency claims, we fully agree with the trial court's conclusion that the evidence was sufficient to sustain the jury's convictions. The opinion notes that the Commonwealth built its case piece by piece. "Once arranged by the finder of fact, however, the evidentiary pieces created a clear picture of [Appellant]'s absolute complicity in each and every one of the four burglaries of which he was convicted." Trial Court Opinion, 11/21/17, at 6. Appellant's brief largely focuses on the lack of direct evidence placing Appellant inside the residences, but Judge Garhart's opinion carefully examines the direct evidence implicating Appellant in these crimes, namely, the fact that Appellant's girlfriend testified that Appellant gave her a diamond bracelet that was identified as stolen from one of the homes. Additionally, other stolen items were recovered from pawn shops in Ashtabula County. The receipts for these items were made out to the co-defendant's sister, who testified that both Appellant and co-defendant gave her those items. As the trial court opinion notes, the Commonwealth may prove every element beyond a reasonable doubt by circumstantial evidence, and the prosecution as verdict winner receives the benefit of all reasonable inferences drawn from the evidence. The opinion comprehensively places this direct evidence in context of other pieces of circumstantial evidence, and we agree that the sufficiency claims must fail.

With respect to the second issue, the court also set forth its rationale for admitting the other crimes evidence, and we agree that the judge's decision was not an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/22/2018

COMMONWEALTH OF PENNSYLVANIA,       : IN THE COURT OF COMMON PLEAS
                      Appellee,                  : OF ERIE COUNTY, PENNSYLVANIA
                                                 : CRIMINAL DIVISION
              V.                                 :
                                                 :
PATRICK FORTNEY,                                 :
                      Appellant                  : No. 4128-2016

**1925(a) OPINION**

Garhart, J., November ⏉1    , 2017

     Appellant, Patrick Fortney, appeals from this Court's denial of Appellant's Post-Sentence Motions on September 13, 2017, following his conviction for burglary, criminal trespass, conspiracy to commit burglary, theft by unlawful taking, and criminal mischief.[1] Based on the following, this Court respectfully requests his sentence be affirmed.

## I.  BACKGROUND OF THE CASE

     On March 7, 9, 16, 25, and 28, 2016 a string of daytime burglaries occurred certain rural areas of Erie County near the Ohio border.[2] The burglaries all bore loosely overlapping similarities with each other and with a sixth burglary committed on Monday, March 28, 2016, in Ashtabula County, Ohio.[3] Appellant and his co-defendant were apprehended in the Ohio burglary, to which they later pled guilty.[4] All of the burglaries involved at least two or more of the following elements; (1) a small red sedan was observed at or near the scene of the crime; (2)

---

[1] 18 Pa.C.S.A. §§3502(a)(2), 3503(a)(1)(ii), 903/3502(a)(2), 3921(a), and 3304(a)(2), respectively.

[2] The residences were owned by Brad Hayes (Monday, March 7, 2016 burglary, Count 1); Catherine Szyplik (Wednesday, March 9, 2016 burglary, Count 2), Diane Woodie (Wednesday, March 16, 2016 burglary, Count 3), Gerald Cafardi (Friday, March 25, 2016 burglary, Count 4), and Timothy Krahe (Monday, March 28, 2016 burglary, Count 5). Appellant was acquitted of the March 9, 2016 burglary of the Szyplik residence.

[3] The Ashtabula, Ohio burglary occurred on March 28, 2016, the same day as the last of Erie County burglary (Krahe residence). Appellants were apprehended in Ohio while they were in a small red sedan being driven by Patrick Fortney and owned by Fortney's girlfriend, Yvette Santiago. A witness to the Krahe burglary, Eric Sharf, saw a small red sedan parked near the Krahe residence near the time of the Krahe break-in. N.T. (Day 1) at 160.

[4] N.T. (Day 2) at 78-80.

two Caucasian men were observed at or near the crime scenes; (3) one or both of the men had tattoos on their forearms; (4) the crimes were committed on a Monday, Wednesday, or Friday; (5) the crimes were committed during the daytime, usually before noon or 1:00 p.m. N.T. Trial, 6/22/17, (Day 1) 50-168; (6) the burglarized properties were in geographically close, rural areas near the Pennsylvania/Ohio border; (7) all of the burglaries occurred within a three week period in March of 2016.

Furthermore, law enforcement testified at trial that the tire tread prints from the red VW Jetta driven by Appellant during the Ashtabula, Ohio burglary was similar to tire tread prints found at the Cafardi residence. N.T. (Day 2) at 61. Trooper Youngberg also testified that sneaker prints found at the Cafardi residence appeared similar to the distinctive tread on Appellant's shoes, Nike Air Jordans. N.T. (Day 2) at 59.

Appellant's girlfriend, Yvette Santiago, turned over a stolen diamond bracelet to the police. Ms. Santiago credibly testified that Appellant gave her the diamond bracelet. N.T. Trial, 6/23/17, (Day 2) at 4-21. Other stolen items were recovered from Ashtabula County pawn shops, with the pawn shop receipt made out to the co-defendant's sister, Belinda Buttons, or co-defendant's girlfriend, Jessica Knowlton. N.T. Trial, 6/23/17, (Day 2) at 1-33. Notably, Belinda Buttons admitted during cross examination that she received the stolen cameras found at her residence from both Patrick Fortney and Walter Sterling. N.T. Trial (Day 2) at 185. Finally, Appellant's girlfriend, Yvette Santiago, testified that she would routinely let Appellant drive her car, a 2008 Volkswagen Jetta, a small red four door sedan, on Monday, Wednesday, and Friday mornings when she was at work. He would join her regularly for lunch between 12:30 and 1:00 p.m. N.T. Trial (Day 2) at 8-13, 20.

2

After a two day jury trial, the Appellant, Patrick Fortney, and his co-defendant, Walter Sterling, were convicted of four out of the five burglaries and related charges. N.T. (Day 2), at 190-195.[5] On August 14, 2017, Appellant was sentenced to the following concurrent terms of incarceration: 24 to 48 months, plus 60 months of state probation, at *each* conviction at Counts 1, 3, 4, and 5 (burglary). Counts 6, 8, 9, and 10 (criminal trespass) merged for sentencing purposes. Counts 13, 14, and 15 (conspiracy to commit burglary) resulted in concurrent state probationary sentences of 10 years. Counts 16, 18, 19, and 20 (theft by unlawful taking) merged. Counts 21 and 22 (criminal mischief) resulted in no further penalty. Appellant was further ordered to pay restitution in the amount of $4,340.05 and costs. On August 24, 2017, Appellant filed Motions for Post-Sentence Relief, seeking, *inter alia*, a Judgment of Acquittal and requesting a new trial, which motions were denied by this Court on September 13, 2017.

On September 25, 2016, Appellant filed a timely Notice of Appeal. On September 26, 2017, Appellant filed a Concise Statement of Matters Complained of on Appeal, raising 15 issues for appeal. Paraphrased, Appellant complains of the following:

1. The evidence is insufficient to support the verdicts on all guilty charges;
2. The verdict was against the weight of the evidence on all guilty charges;
3. The trial court erred in admitting evidence of the Ashtabula, Ohio burglary, as a prior bad act, pursuant to Pa. R.E. 404(b), because the Ohio burglary: (a) was not substantially similar to the Erie County burglaries to establish a common scheme, plan or design; (b) failed to establish the intent or motive of the Appellant; (c) weighed more toward prejudice rather than probative value; and (d) constituted inadmissible propensity evidence; and
4. The trial court erred in consolidating Appellant's trial with the trial of his co-defendant, Walter Sterling, because the Commonwealth failed to provide notice and/or submit a proper motion to consolidate. Appellant was deprived of his due process rights and right to a fair trial.

Appellant's Concise Statement, 10/10/17, at ¶¶ 1-15.

---

[5] Appellant was acquitted of the Szyplik burglary. N.T. (Day 2) at 191.

## II.   DISCUSSION

### A.  Sufficiency of Evidence.

Appellant's first claim is that the trial court erred when it denied Appellant's post sentence motion for judgment of acquittal, as there was insufficient evidence supporting his conviction for (1) burglary, (2) criminal trespass, (3) conspiracy to commit burglary, (4) theft by unlawful taking, and (5) criminal mischief. The standard for reviewing the sufficiency of evidence on appeal is as follows:

> When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner and must determine whether the evidence was such as to enable a fact finder to find that all of the elements of the offense [ ] were established beyond a reasonable doubt.

*Commonwealth v. Lawrence*, 960 A.2d 473, 477 (Pa. Super. 2008), *citing Commonwealth v. Holley*, 945 A.2d 241, 246-247 (Pa. Super. 2008). In applying the above noted test, the Pennsylvania Superior Court has noted that it will not weigh the evidence and substitute its judgment for the fact-finder. *Commonwealth v. Grays*, 167 A.3d 793, 806 (Pa. Super. 2017). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Id.* Any doubts regarding a defendant's guilt may be resolved by the fact finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.*

The Commonwealth may sustain its burden of proving every element of a crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Grays*, 167 A.3d at 806. Moreover, in applying the above test, "the entire record must be evaluated and all evidence actually received must be considered." *Id.* Finally, the finder of fact is free to believe

4

all, part or none of the evidence when passing judgment upon the credibility of witnesses and the weight of the evidence produced. *Id.*

## 1. Burglary.

Appellant was convicted of burglary at Counts 1, 3, 4 and 5. Burglary is defined at 18 Pa. C.S.A. §3502 (a)(2):

§3502 Burglary

(a) **Offense defined.** – A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

\*\*\*

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which a the time of the offense no person is present;

Appellant claims that the Commonwealth failed to prove "through either eye-witness testimony or forensic evidence, that Appellant was ever at any of the locations that were burglarized or that he entered any of the homes alleged to have been burglarized." Appellant's Statement of Matters Complained of on Appeal, ¶1.[6]

In the instant case, Appellant challenges the finding that he "entered the building" in each of the four burglaries of which he was convicted, and claims that there were "no eye witnesses" and "no forensic evidence" against him. The record belies Appellant's claim on each burglary conviction at Counts 1, 3, 4, and 5. These counts pertain to the burglaries of the Hayes, Woodie, Cafardi and Krahe residences.[7] We find that there was sufficient evidence to convict Appellant of burglary in each of these crimes. Not only was there sufficient evidence of similar

---

[6] We note that even if, for argument's sake, this statement is true, the jury was still free to infer from circumstantial evidence that appellant was present at the burglarized locations and that he entered the burglarized homes. *Commonwealth v. Grays*, 167 A.3d at 806 (the Commonwealth may sustain its burden of proving every element of a crime beyond a reasonable doubt by means of wholly circumstantial evidence).

[7] The jury found there was insufficient evidence connecting Appellant to the burglary of the Szyplik home. N.T. (Day 2) at 193.

5

characteristics between all of the burglaries, including the Ashtabula, Ohio burglary to which Appellant pled guilty, but there was also sufficient individualized evidence attaching Appellant to each crime.

Appellant's blanket sufficiency challenge requires a thorough review of the extensive testimony in this case.[8] Piece by piece, the Commonwealth built its case against Appellant. Some of the evidence was direct and some was circumstantial. Disjointed and seemingly lacking in cohesion, like a strewn puzzle, the picture of Appellant's guilt was unclear until the last breath of the final witness for the prosecution. Even then, the pieces required organization. Once arranged by the finder of fact, however, the evidentiary pieces created a clear picture of Fortney's absolute complicity in each and every one of the four burglaries of which he was convicted.

First, Brad Hayes testified that his residence at 9851 Old Albion Rd., Cranesville, Pennsylvania was broken into on Monday, March 7, 2016 at between 6:30 a.m. and 11:15 a.m. When Mr. Hayes returned to the house at 11 a.m. he found his fire safe smashed in the backyard and the house sliding glass door open. N.T. (Day 1) at 51-53. The thieves had taken the Hayes' television, cash, guns, jewelry, and camera and camera bag. N.T. (Day 1) at 53-58. Mr. Hayes identified photos of his wife's necklace (Commonwealth Exhibit #1), camera and camera bag (Commonwealth Exhibit #2), as well as a silver bracelet given by his mother-in-law to his wife (Commonwealth Exhibit #3). N.T. (Day 1) at 55-59. Under examination by Commonwealth counsel as a hostile witness, Belinda Button testified that she had gotten the camera and camera bag, (both of which were found in her room by the Pennsylvania State Police), from Pat Fortney and Walter Sterling. N.T. (Day 1) 185.

---

[8] Regrettably.

6

Furthermore, the Hayes' neighbor, Michele Mihalak, who lived about a mile away from Mr. and Mrs. Hayes, testified that at about 9:30 a.m. on March 7, 2016, the day of the Hayes burglary, she saw a red sedan going very slowly down her road, Lexington Road. N.T. (Day 1) at 67, 70. Ms. Mihalak could see that that there were two people in the car. The driver was a Caucasian male bearing tattoos on his lower left forearm. *Id.* at 67. At trial, Appellant was asked to roll up his sleeves to show the jury the tattoos on his lower forearms.[9] *Id.* Ms. Mihalak testified that she followed the red car for a half mile down the road and the red car turned around and went the other way. *Id.* at 68.

Next, Diane Woodie took the stand and testified that she lives on 2071 Welch Road in Waterford. On Wednesday, March 16, 2016, between 9:30 a.m. and 11:30 a.m. she left her home. She returned to find the sliding glass door open. Her engagement and wedding ring and a 42 inch Panasonic television were missing. N.T. (Day 1) at 94-97. Ms. Woodie's neighbor, Sam McCaughtry, also testified. As he drove by the Woodie residence at between 10:30 a.m. and 11:00 a.m., he saw a red sedan parked 100 yards up the road from the house. He noted that it is unusual for a car to be parked on the side of the road in that area. He then noticed a Caucasian man running through a field toward the parked car from Mrs. Woodie's house. The running man got in the passenger side of the red sedan and the car took off. *Id.* at 100-106.

The next burglary victim was Gerald Cafardi who testified that he lives on 13774 Old Route 19 North, Waterford. *Id.* at 109. On Friday, March 25, 2016, his home was broken into between 9:00 a.m. and noon or 1:00 p.m. Mr. Cafardi had just returned from Good Friday services and entered his home through the garage. Once inside his home, he noticed the front door jamb lying in the middle of the living room floor. *Id.* at 111. He found his wife's bracelet

---

[9] We note that Ms. Mihalak also claimed there may have been facial hair or a tattoo on the driver's neck, but Appellant does not have a neck tattoo. Id. at 67, 72.

7

missing and identified the bracelet in Commonwealth Exhibit 14. Mr. Cafardi also identified a footprint found in the dirt of the garden by his porch, as well as a dirt-footprint left on his front door, where it had been kicked-in. (Commonwealth Exhibit #13). The Pennsylvania State police took photographs of a tire print at the scene. (Commonwealth Exhibit #11). Patrick Lamb was the Cafardi's next door neighbor. He noticed a smaller red car in front of the Cafardi's house the day of the burglary, parked on the opposite side of the road with its four way flashers on, facing against traffic, between 9 a.m. and 11 a.m. *Id.* at 139-142.

The last victim, Tim Krahe, testified that he lives at 7012 Bargain Road. On Monday, March 28, 2016, at between 11 a.m. and 1:30 p.m. his home was burglarized. *Id.* at 145. A window was open and the front door was open with the door frame cracked. "It appeared someone had tried to kick the front door down, so the frame was cracked." *Id.* at 146. The screened-in porch was cut so someone could reach in to unlock the back door. *Id.* at 146. Mr. Krahe lost a 50 inch Samsung TV, (serial number z6p43cad900801w), a Cannon T5I Rebel camera, bag and lens, and some jewelry. *Id.* at 146-154. (Commonwealth Exhibits #16-#20).

Eric Sharf, the Krahe's next door neighbor testified that on March 28, 2016 he saw a red car parked up from the Karhe's house on the street. *Id.* at 160. It stayed there for a while. *Id.* at 160. He noticed a Caucasian male outside the car walking around. Then, he heard the car speed off between 10:30 a.m. and 11:00 a.m. *Id.* Mr. Scharf was sure of the time because the power went out at that time. *Id.* at 161. Later, Mr. and Mrs. Scharf went out to lunch when they got a phone call from the Krahe's that the Krahe's home had been broken into. Mr. Scharf testified, "And we're like, oh shit, the red car. And we both just realized what was going on right at that instant. Like, we knew what was up then." *Id.* at 165.

Similarly, witness Katie Fedchick testified to driving by the Krahe residence on March 28, 2016. She too saw a red car parked on the side of the road around 11 a.m. She saw "two guys running across the lawn." *Id.* at 167. She identified the car as a red Hyundai. *Id.* at 168.

Next, Appellant's (presumably former) girlfriend took the stand. Ms. Santiago was the owner of the 2008 red Volkswagen Jetta. N.T. (Day 2) at 6. She allowed Fortney to use her car while she worked at Kiss Chiropractic Monday, Wednesday, and Fridays from 8:30 a.m. to 6:00 p.m. *Id.* at 7-8. She testified that Appellant would routinely pick her up for lunch when he had her car, usually betweeen 12:30 and 1:00. N.T. (Day 2) at 20. Santiago identified Commonwealth Exhibit #3 as the bracelet Appellant gave her. N.T. (Day 2) at 15-16. We note that the bracelet in Commonwealth Exhibit #3 was also identified by Mr. Hayes as his wife's bracelet, stolen during the burglary of their home. N.T. (Day 1) at 58.

Then Commonwealth witnesses Trooper Christopher Wingard took the stand. Wingard testified that he went to the Ashtabula, Ohio home of Robert Sterling's girlfriend, Jessica Knowlton. N.T. (Day 2) at 24. He searched Knowlton's home and found the items of jewelry identified in Commonwealth Exhibit #4. He also recovered a receipt from "Pawntastics" in Ashtabula, made out to Belinda Button, Sterling's sister, who had pawned a large screen television. *Id.* at 25-26. (Commowmealth Exhibit #15). The television recovered at the pawn shop was identified by Mr. Krahe as the television stolen from his home. N.T. (Day 1)146-149. Trooper Wingard then went to Belinda Button's house where, when given consent to search, he found two cameras in her room and a diamond bracelet on her wrist. *Id.* at 26-27. The trooper identified one of the cameras in Button's possession as from a burglary in Erie County. *Id.* at 31. Belinda Button admitted under cross examination that she got the cameras from Sterling and Fortney. N.T. (Day 1) at 185.

9

Next, Trooper Robert Youngberg testified that he investigated the Woodie, Cafari and Krahe burglaries. N.T. (Day 2) at 50. There were no breaks in those investigations until he learned about a burglary in Ashtabula, Ohio where Fortney and Sterling were in custody for a burglary which involved a red car, a daylight break-in, and a stolen television. Trooper Youngberg thought there were sufficient similarities to follow the Ashtabula, Ohio lead. Trooper Youngberg went to the Ashtabula, Ohio pawn shops (discovered by Trooper Wingard's investigation of Belinda Button) and recovered stolen items from "his [Southern Erie County] burglaries." N.T. (Day 2) at 55. Trooper Youngberg testified that law enforcement officers then recovered a pair of red and white Air Jordan sneakers from the home of Patrick Fortney's girlfriend, Yvette Santiago. *Id.* at 58. (Commonwealth Exhibit #29).

Trooper Youngberg then testified that police found a muddy shoe print on the door of the Cafardis residence. He identified a photo of the shoe print found on the Cafardi residence and compared it to the tread of Fortney's red and white Air Jordan sneakers. Trooper Youngberg said that the muddy print on the Cafardi's door was "very similar" to the tread of Appellant's shoe. N.T. (Day 2) at 56-59.

Next, the Trooper testified that the troopers found tire tracks along the roadway where the red vehicle had parked near the Cafardi residence. These tracks were photographed by the police immediately after the Cafardi burglary. N.T. (Day 2) at 59. Trooper Youngberg compared the tire tracks with photographs of the tread of the tires on the red VW Jetta owned by Yvette Santiago and driven by Fortney. Trooper Youngberg testified that the tire tracks at the Cafardi crime scene were "very similar" to the tire tread of the red VW Jetta driven by Patrick Fortney. *Id.* at 62. (Commonwealth Exhibits #11, #30).

Finally, Jeff Brown, a detective and records custodian from the Ashtabula, Ohio Sheriff's Department testified to Sterling and Fortney's conviction in Ohio for an Ashtabula, Ohio daytime burglary on the same day as the burglary of the Krahe residence, in Pennsylvania, just over the border. On March 28, 2016, Fortney and Sterling were caught in the act of committing a burglary in Ashtabula. Fortney was driving his girlfriend's red VW Jetta. He was wearing his red and white Air Jordan tennis shoes. Both Sterling and Fortney pled guilty to the Ashtabula burglary. N.T. (Day 2) at 72-80.

Based on the evidence presented and the inferences to be drawn therefrom, the evidence was sufficient to sustain appellant's conviction for burglary of the four homes noted above. Contrary to Appellant's claim that all of the evidence pointed solely to Walter Sterling as the perpetrator of these burglaries, the evidence consistently pointed to not one, but a pair of robbers, acting in concert in each and every burglary. Patrick Fortney was the one who had Monday, Wednesday, Friday access to his girlfriend's red sedan, the car identified by eye witnesses in each of the burglaries. Patrick Fortney was identified as having tattoos on his lower forearms. Patrick Fortney's girlfriend was in possession of a bracelet stolen from the Krahe residence. Patrick Fortney was identified by Belinda Button as the source of a stolen camera found in her room by a State Trooper. Patrick Fortney's shoe print, or one very similar to his Air Jordan sneaker tread, was found on the kicked in door at the Cafardi residence. A tire tread very similar to Patrick Fortney's borrowed red sedan was found at the Cafardi residence. Patrick Fortney was and apprehended while committing a daytime burglary in Ashtabula, Ohio, while driving his girlfriend's red Jetta. This was on the same day as the Krahe burglary, just over the state line in Erie County, where not one, but two witnesses saw a suspicious small red sedan parked near the Krahe residence during the burglary.

11

The Commonwealth may sustain its burden of proof wholly by means of circumstantial evidence. *Commonwealth v. Sullivan*, 284 A.2d 504 (1971). It is permissible for the trier of fact to draw inferences based on the evidence presented by the Commonwealth. *Commonwealth v. Fontana*, 327 A.2d 154 (1974). After a review of the evidence cited above, we find that there was sufficient evidence for the jury to find that Appellant guilty of burglary and, specifically, that Appellant was present at the location of the four burglaries for which he was convicted.

## 2. Criminal Trespass.

Appellant was convicted of criminal trespass at Counts 6, 8, 9, and 10. A person commits the offense of criminal trespass "if, knowing that he is not licensed or privileged to do so, he breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. § 3503(a)(1)(ii). A person "break[s] into" a building or occupied structure if he "gain[s] entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." *Id.* § 3503(a)(3).

Again, Appellant claims that this offense was insufficiently proven at trial because there was neither eye-witness testimony nor forensic evidence, that "Appellant was ever at any of the locations that were burglarized or that he entered any of the homes alleged to have been burglarized." Appellant's Statement of Matters Complained of on Appeal, ¶2.[10] Appellant claims that the same element of proof was absent from his trespass convictions and his burglary convictions, namely proof of his presence at each crime scene. Based on the same testimony and evidence discussed in the above burglary analysis, we find that there was sufficient evidence to establish that Appellant was present at and trespassed upon the burglarized properties.

---

[10] Once again we note that even if, arguendo, the prosecution lacked eye-witness or forensic evidence, the jury was still free to infer from circumstantial evidence that appellant was present at the burglarized locations and that he entered the burglarized homes. *Id.*

12

### 3. Theft by Unlawful taking.

Appellant next challenges the sufficiency of evidence in support of his conviction of theft by unlawful taking. Theft is statutorily defined as follows:

**§ 3921. Theft by unlawful taking or disposition.**

(a) *Movable property.* --A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921. Appellant claims that the Commonwealth failed to prove that "Appellant ever took or exercised control over any of the property that was taken from any of the burglarized homes and…failed to prove that Appellant was ever at any of the locations that were burglarized." Appellant's Statement of Matters Complained of on Appeal, ¶3. Appellant's presence "at any of the locations that were burglarized" has been discussed above. Furthermore, the Commonwealth presented sufficient direct and circumstantial evidence showing that the Appellant unlawfully took or exercised unlawful control over, moveable property of another with the intent to deprive. 18 Pa. C.S.A. §3921(a).

First, there was direct evidence that Appellant stole and dispensed items taken from the Hayes residence. Brad Hayes testified that a bracelet was taken in the burglary of his home. N.T. (Day 1), p. 53. Mr. Hayes then identified a photograph of the bracelet in Commonwealth Exhibit 3 as one of the items missing from his home immediately after it was burglarized. N.T. (Day 1), at 58-59. Mr. Hayes testified as follows:

Q.      This is the next photo. Could you…please identify what's in that photo? (Commonwealth Exhibit 3 marked for identification).

A.      (Brad Hayes): A silver bracelet.

Q.      And do you recognize it?

A.      Yes I do.

13

Q. How do you recognize it?

A. It's the bracelet that my wife's mother bought her.

Q. Okay. Is there anything distinguishing about that bracelet that makes you sure that that's the bracelet that your mother – your wife's mother bought her?

A. The diamond pendant.

Then, Defendant's former girlfriend, Yvette Santiago, credibly testified that Appellant gave her the same bracelet, which she also identified in the photograph of the recovered item, entered as Commonwealth Exhibit 3. N.T. (Day 2), p. 16, Commonwealth Exhibit 3. Yvette Santiago testified as follows:

Q. [I] give you previously marked Commonwealth Exhibit 3. Do you recognize that picture at all or the item in that picture?

A. (Yvonne Santiago): Yeah.

Q. And what is that?

A. A picture of the bracelet that I had.

Q. Is this that picture?

A. Yeah.

Q. And how did you come to have that bracelet?

A. Patrick had given it to me.

Q. And when you say Patrick, do you mean Patrick Fortney?

A. Yes.

Q. This individual –

A. Yeah.

N.T. (Day 2), at p. 15-16. Thus there was sufficient evidence to directly connect Patrick Fortney as having taken control of at least one specific item taken in the Hayes' robbery.

14

In addition, Belinda Buttons identified Fortney, as well as Walter Sterling, as the source of the stolen cameras found her room. Belinda Buttons testified:

Q.     Where did you get the cameras from?

       ***

Q.     Belinda?

       A. I got some from the guys and some from my sister Jessica.

       Q. Okay. And specifically, you said, "the guys," who are the guys, Belinda?

       A. Patrick and Walter.

N.T. (Day 1), at 185. Cameras were taken from the Hayes and Krahe residences. N.T. (Day 1) at 53, 146. Officer Wingard testified that the cameras found in Belinda Button's home were from the Erie County burglaries that were the subject of this trial. N.T. (Day 2) at 31.

The remainder of the theft evidence against Appellant was circumstantial. See *Commonwealth v. Grays*, 167 A.3d at 806 (the Commonwealth may sustain its burden of proving every element of a crime beyond a reasonable doubt by means of wholly circumstantial evidence); *Commonwealth v. Fontana*, 327 A. 2d 154 (Pa. 1974)(it is permissible for the trier of fact to draw inferences based on the evidence presented by the Commonwealth). Based on the evidence presented and inferences to be drawn therefrom, the evidence here was sufficient to sustain Appellant's conviction for theft by unlawful taking. Appellant was clearly the driver of the getaway vehicle in each and every burglary. His (borrowed) vehicle would have carried off the contraband taken in each and every break-in. There was significant testimony from Troopers Wingard and Youngberg as to the additional items recovered from the other burglaries which they found in Ashtabula pawn shops or at the homes of Belinda Button and Jessica Knowlton.

15

These items could only have reached their destinations via Appellant's "unlawful control over" these stolen items in the red VW Jetta Appellant was driving.

### 4. Criminal Mischief

Next, Appellant challenges the sufficiency of evidence in support of his conviction of two counts of criminal mischief with respect to the Krahe and Cafardi residences which were damaged during the break-ins. Criminal mischief is statutorily defined by §3304 of the Crimes Code, in relevant part, as follows:

> (a) **Offense defined.**—A person is guilty of **criminal mischief** if he:
> * * *
> (2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property;

18 Pa.C.S.A. § 3304(a). Appellant claims that criminal mischief was insufficiently proven at trial because "Appellant was not at either location that was tampered with and damaged during the course of the underlying alleged burglaries." Appellant's Statement of Matters Complained of on Appeal, ¶4.

There was plenty of evidence showing tampering with property, including kicked-in doors, cut screens, broken safes, and other damage to the victim's homes and property. However, Appellant only challenges the element of "being at the location" tampered with and damaged. The issue of Appellant's presence at the various properties has already been discussed extensively above. There was sufficient evidence for the jury to conclude that Appellant was present at each of the four properties which are the subject of his conviction, either by direct evidence or adequate circumstantial evidence.

### 5. Criminal Conspiracy.

Finally, Appellant challenges the sufficiency of evidence in support of his convictions for criminal conspiracy to commit burglary at Counts 11, 13, 14, and 15. Appellant claims that

16

criminal conspiracy was insufficiently proven at trial because, the Commonwealth "failed to establish that Appellant agreed to commit burglaries with Co-Defendant Walter Sterling and Mr. Sterling's actual co-conspirators: Belinda Button and Jessica Knowlton." Appellant's Statement of Matters Complained of on Appeal, ¶5.

Criminal conspiracy is statutorily defined as follows:

**§903. Criminal Conspiracy**

(a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). This requires proof that: 1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy. *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super.2011). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Commonwealth v. Murphy*, 795 A.2d 1025, 1038 (Pa.Super.2002) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a **conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy**

17

**beyond a reasonable doubt.** Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. McCall,* 911 A.2d 992, 996–97 (Pa.Super.2006) (citation omitted).

Here, the evidence was more than adequate for the jury to reasonably find that Appellant and Walter Sterling, by way of their relationship to each other, agreed to commit crimes, and with shared intent, committed overt acts in furtherance of the conspiracy to burglarize the four homes in Southern Erie County. This "web of evidence" was more than sufficient to permit an inference that Fortney was acting as part of a criminal partnership with his co-defendant, Walter Sterling. Accordingly, there was sufficient evidence to support Appellant's burglary conviction based upon conspirator and accomplice liability. 18 Pa. C.S.A. §306(b)(c), 903(a)(1).

Furthermore, there was ample circumstantial evidence of a shared criminal intent between Patrick Fortney and Walter Sterling. The evidence showed that Appellant drove the red getaway car at each and every burglary, he kicked in the door to the Krahe residence, he gave away the Hayes' diamond bracelet to his girlfriend, and he gave the stolen cameras to Belinda Button to pawn. "(W)here the conduct of the parties indicates that they were acting together with a common and corrupt purpose in view the jury may properly infer that a conspiracy did exist. *In Interest of Waldron,* 353 A.2d 43, 46 (Pa. Super. 1975)(citations omitted). Appellant was knee deep in this burglary operation. There was sufficient circumstantial evidence to show a tacit agreement between Appellant and his co-conspirator.

### B. The weight of the evidence was sufficient to prove to the finder of fact that Appellant was guilty of theft by unlawful taking and conspiracy to commit burglary.

Appellant also challenges his conviction based on the weight of the evidence against him with respect to his conviction for theft by unlawful taking and

18

conspiracy to commit burglary.[11] Appellant Concise Statement ¶¶14-15. Challenges to the consistency and credibility of testimony go to the weight of evidence rather than to sufficiency. *See Commonwealth v. Montalvo*, 956 A.2d 926, 932 n.6 (Pa. 2008) (citing *Commonwealth v. DeJesus*, 860 A.2d 102,107 (Pa. 2004)). The weight of the evidence is entirely for the finder of fact who is free to believe all, part or none of the evidence and determine the credibility of the witnesses. *Commonwealth v. Morris, 958 A.2d 586, 577 (Pa. Super. 2008)*. A verdict is only against the weight of the evidence if it is so contrary to the evidence that it shocks one's sense of justice. *Commonwealth v. Charlton, 902 A.2d 554, 561 (Pa.Super. 2006)*. Appellate review is limited to whether the trial courts "palpably abused its discretion" in ruling on the weight claim. *Commonwealth v. Champney*, 832 A.2d 403 (2003). "[A]n appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence," as the trial judge is in the best position to view the evidence presented. *Commonwealth v. Wright*, 865 A.2d 894, 915 (Pa.Super.2004) (citations omitted).

In this case, Appellant was found guilty of theft by unlawful taking and conspiracy to commit burglary. The elements of these offenses are outlined above. After careful review we are satisfied that the testimony of the victims was completely credible, as was the testimony proffered by various eye witnesses who consistently testified to seeing a small red sedan with two Caucasian men in it suspiciously cruising or parked on the side of country roads near the homes which were later found to have been burglarized. We also find credible the succinct testimony of the two investigating officers, Troopers Wingard and Youngberg, who documented the tire tracks and sneaker prints found at the crime scenes, as very similar to the treads of the Fortney's borrowed VW and his Air Jordan shoes. In fact, the jury was free to assess the similarity of the treads themselves by viewing the photographs taken by the officers.

In contrast, Erwin Chapman, Fortney's 68 year-old uncle, took the stand in an attempt to provide an alibi for Appellant. N.T. (Day 2) at 90 – 101. Chapman's testimony was equivocal at best. He testified that during approximately three weeks in March of 2016, he would pick

---

[11] Counts 16, 18, 19 and 20 (Theft by Unlawful Taking) and at Counts 11, 13, 14, and 15 (Conspiracy to Commit Burglary).

19

Appellant up to perform landscaping work together. Chapman was not clear about the days he worked with his nephew. On direct his testimony inferred that he and Appellant worked together almost every day between March 3 and March 20 from the hours of 10 a.m. and 3 p.m. However, on cross he admitted that they only worked "three or four days out of the week." N.T. (Day 2) at 96. He claimed the days they worked, "had to be Tuesday, Wednesday, and Thursday," because "those are the slow days at my barber shop." N.T. (Day 2) at 96. However, on cross he admitted that "if presented with evidence to show that on one or more of the days [Appellant] was elsewhere, you don't have a specific recollection of any specific day; you just know during that month he was working on generally those days?" N.T. (Day 2) at 100.

Chapman's testimony did not provide a clear cut alibi for Appellant, especially since the burglaries took place on Mondays, Wednesdays, and Fridays. No other exculpatory evidence was presented on Appellant's behalf. The jury was free to believe or disbelieve the testimony of Appellant's well-meaning uncle who admitted that he loved his nephew and didn't want him to be convicted of a crime. N.T. (Day 2) at 95. If the jury failed to treat Chapman's testimony as an iron clad alibi in the exercise of their discretion, it was not "so contrary to the evidence that it shocks one's sense of justice." *Charlton*, 902 A.2d at 561.

Finally, the testimony of Belinda Button, to the extent that it may have exculpated Appellant, was completely unbelievable and contrary to the credible testimony given by all other witnesses. When shown a photo of a very large, fifty inch, Samsung Smart TV, Button testified she recognized it "vaguely." N.T. (Day 1) at 178. Button claimed she got the TV "from her mother's house." *Id.* at 179. Her brother told her it was his. *Id.* at 180. She also testified that she found a stolen bracelet on the "back steps" of her building. *Id.* at 178. Then she said she found it in the "back hallway" of her building. *Id.* at 183. She denied having told Trooper Wingard that

20

Fortney or Sterling was driving a bright red Volkswagen. *Id.* at 184. She denied telling the trooper that she received cameras from Fortney. *Id.* She testified, "I don't remember a lot." *Id.* The Court admonished Buttons to answer the prosecutor's questions about where Button got the cameras and jewels. *Id.* at 185. Ultimately, Belinda Button was not credible and her testimony did not provide any basis for exculpating Sterling or Fortney. Once again, it does not "shock one's sense of justice" that the finder of fact did not swallow Button's hazy and inconsistent version of the facts.

### C. The trial court properly admitted evidence of the Ashtabula, Ohio burglary.

The burglary committed in Ashtabula, Ohio by Fortney and Sterling on the same day as the last burglary in Southern Erie County, was relevant, admissible, and its probative value outweighed any prejudice. Evidence of prior bad acts is inadmissible to prove character or to show conduct in conformity with that character, however such evidence is admissible to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Commonwealth v. Weiss*, 81 A. 3d 767 (Pa. 2013).

The inimical facts of the Ohio burglary and the four Erie County burglaries, of which Appellant was convicted, clearly showed a common plan or scheme; a signature *modus operandi* linking the Appellant to the crimes in both states. Moreover, the Ohio burglary was relevant to show the complete story or context of the events surrounding the Erie County crimes. The trial evidence showed that after committing a string of identical day time, March 2016, robberies in a borrowed red VW Jetta, which was available to them on Mondays, Wednesdays and Fridays, the perpetrators pulled one last job, closer to their home in Ashtabula, Ohio. This time, they got

21

caught "red handed" in the signature red car and with Appellant wearing his signature red Air Jordans: a perfect "Study in Scarlet."[12]

Here, the Commonwealth admitted into evidence the fact that Fortney and Sterling were apprehended while committing a burglary in Ashtabula, Ohio. Jeff C. Brown, a detective with the Ashtabula County Ohio Sheriff's office testified, based on an incident report for a burglary committed on March 28, 2016, in Ashtabula, Ohio. The suspects were Patrick Fortney and Walter Sterling. N.T. (Day2) at 75. Fortney and Sterling were apprehended in a red VW Jetta, registration plate GQM7408, registered to Yvette Santiago. (Commonwealth Exhibit 26). The driver was Patrick Fortney. Fortney was found wearing a pair of red Air Jordan sneakers as identified in Commonwealth Exhibit 34-1. Both Fortney and Sterling pled guilty to that Ohio burglary. N.T. (Day 2) at 72-88.

Prior to admitting the evidence of the Ohio burglary, the court addressed the issue with trial counsel:

> THE COURT: All right. Now, the Conneaut [Ohio] matter. What am I going to do with this burglary in Conneaut? And the answer is [] I'm going to reserve judgment on that motion until I see the Commonwealth's case in its entirety and then you can, at the last – I want to make sure that there are these elements of commonality that you say Ohio links to and I want to see them in the record flushed out with some detail hanging on the bones of this allegation. And then when I see the Commonwealth's case as it occurred in Pennsylvania, I'll be able to make an attempt – a determination – a careful determination of whether Ohio is just an attempt to prejudice because of a weak case or whether it's proper because there were things that actually show this plan, scheme or design.

N.T. (Day 1) at. 21-22. Later, during the trial, it became apparent that there were elements of a common scheme and design in both the Ohio and Erie County crimes. These common elements were relevant to the case.

---

[12] All due credit given to sir Arthur Conan Doyle.

22

Relevance is the threshold for admissibility of evidence. *Commonwealth v. Cook*, 952 A. 2d 594, 612 (2008). Pennsylvania Rule of Evidence 401 Provides:

**Rule 401. Test for Relevant Evidence.**

Evidence is relevant if:

(a) It has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) The fact is of consequence in determining the action.

Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015); citing *Commonwealth v. Drumheller*, 808 A. 2d 893, 904 (Pa. 2002).

Pennsylvania Rule of Evidence 402 provides that, generally, "[a]ll relevant evidence is admissible" and "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is that which has "any tendency to make a fact more or less probable than it would be without the evidence [,] and the fact is of consequence in determining the action." Pa.R.E. 401(a), (b). Thus, the rules of evidence preclude testimony and evidence if it "does not tend to prove or disprove a material fact in issue, or to make such a fact more or less probable, or if it does not afford the basis for a logical or reasonable inference or presumption as to the existence of a material fact in issue." *Commonwealth v. Thompson, 779 A.2d 1195, 1200–01 (Pa.Super. 2001)* (quotation marks, quotation, and citation omitted).

Pa. R.E. 404(b)(2), provides, in relevant part:

**Rule 404. Character Evidence; Crimes or Other Acts**
***
**(b) Crimes, Wrongs or Other Acts**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2). "[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." *Commonwealth v. Melendez–Rodriguez*, 856 A.2d 1278, 1283 (Pa.Super.2004). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Id.* Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident. *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501 (2005). When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice. *Commonwealth v. Hairston*, 84 A.3d 657(2014).

One of the exceptions to the inadmissibility of other acts or crimes falls under the umbrella of evidence demonstrating that the defendant employed a "common scheme or plan" in the perpetration of similar crimes. The Pennsylvania Superior Court has noted that:

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator.

*Tyson,*119 A.3d at 358-359.

In *Commonwealth v. Morris*, 425 A.2d 715 (Pa. 1981), the Pennsylvania Supreme Court allowed evidence of a second robbery where the two crimes bore very similar facts, robberies in an elevator in the same building, five days apart, at the same time in the evening and the victims were women with small children. The Morris court noted:

> The similarity in the timing, implementation and event he plan of escape of each robbery provides the distinctive and unusual modus operandi which would justify the conclusion that the perpetrator of one was the perpetrator of the other.

*Morris*, 425 A.2d at 721.

Furthermore, the Superior Court requires a balancing test to assure the common crimes are not too remote in time and that the probative value is not outweighed by the potential prejudice to the defendant. *Tyson*, 119 A.3d at 359-360. In Tyson, the

> [T]he issue is whether there was a logical connection between the two crimes in question that would allow admission of this evidence to prove the identity of the perpetrator. The probative value of the degree of similarity of the crimes is inversely proportional to the time period separating the crimes.

*Commonwealth v. Bronshtein*, 691 A.2d 907, 916 (1997).

"Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence.... Jurors are presumed to follow the trial court's Instructions." *Hairston,* 84 A.3d at 666. Here, the trial court issued a cautionary statement to the jury, not once, but twice:

> THE COURT: All right. Ladies and gentlemen, a little bit of a cautionary instruction before I exclude this witness. Now, I've allowed the prosecution, the Commonwealth, to put in evidence of what happened in Ohio where these two young men were picked up in a burglary and you're going to hear more about that and that led to certain evidence. But you need to be mindful of certain things. This evidence is not admitted to show these people are guilty of this offense or bad people. Okay? You can't conclude because they did a burglary in Ohio they're guilty here. But elements of what occurred in Ohio are properly for your consideration on what was found in Ohio...But I'm not admitting the evidence to prove they're bad people or because they did it in Ohio they did these.

25

N.T. (Day 2) at 68. Again, prior to closing statements, the court addressed the jury on this issue:

> THE COURT: …Remember what I said about the Ohio matter. That's not admitted to show they're bad people or because there was a crime committed by them in Ohio they necessarily committed it. It may have probative value that you can consider, but consider for that, not a general badge of badness or to generalize between one and the other.

N.T. (Day 2) at 110-111. Furthermore, even the prosecutor, in her closing statement, cautioned the jury to use the Ohio burglary evidence properly:

> Now, there's been some talk about Ohio and the Judge has cautioned you all, and I would caution you again, please don't say, "Oh, they committed the crime in Ohio, therefore they must be guilty of these Pennsylvania crimes," because that is not what that evidence is for and that is not what I'm arguing here today."

N.T. (Day 2) at 134.

Ultimately, there was clearly a similar modus operandi in the Erie County and Ashtabula burglaries: (1) daytime burglaries, (2) on a Monday (Wednesday or Friday), (3) involving two Caucasian men, (4) in a red VW Jetta (or small red sedan); (5) one of the men was wearing red and white Air Jordan sneakers (6) the sneakers bore a tread similar to the footprints found at the Cafardi residence in Erie County.

In addition to the common plan or scheme exception, the evidence of the Ohio burglary was also admissible under the res gestae exception as relevant to furnish the "complete story" or context of events the surrounding crimes. *Commonwealth v. Weiss*, 81 A. 3d 767 (Pa. 2013). Evidence of other crimes may be relevant and admissible where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. *Weiss*, 81 A.3d at 798(citations omitted)(wife's statement that she always found beer cans and marijuana in the car after defendant had driven it was not reversible error). Here, Appellant's final burglary in Ashtabula was the last in a string of four or five burglaries committed in Erie County in March of 2016.

26

### D. The trial court properly did not sever the trials of co-conspirators Walter Sterling and Patrick Fortney.

Appellant's next claim of error is that the court erred in allowing the Commonwealth to consolidate Appellant's trial with the trial of Co-Defendant after the Commonwealth failed to provide notice of consolidation or file a motion for consolidation, "depriving Appellant of a fair trial as the vast majority of the evidence produced in this case inculpated Co-Defendant Walter Sterling and not Appellant." Appellant's Concise Statement, ¶11. Appellant similarly claims error in consolidating the trial of the co-defendants because "the jury was allowed to bear witness to the evidence of the Commonwealth's case in chief against Co-Defendant Walter Sterling to such an extent that Appellant was deprived of his due process rights under the Federal Constitution and Pennsylvania Constitution to a fair trial by an impartial jury." Appellant's Concise Statement, ¶11.

First, we note that the Commonwealth notified Appellant of its intention to try both cases together. The information, filed on February 23, 2017, contains a checked box at the end stating, "Notice is hereby given, per Pa.R.Crim.P. 582 (B)(1), that your case will be tried together with all co-defendant(s) since you are alleged to have participated in the same act or transaction." Counsel for Appellant admits he received the information, at the latest, on March 7, 2017, which was several days after the February 27, 2017 arraignment, waived by Appellant. However, even after his March 7, 2017 service of notice, Appellant did not file a motion opposing the joinder until June 22, 2017, when he filed his pre-trial motions. Appellant waived the right to object. However, even had he objected immediately, the objection would have been meritless, as joinder was appropriate.

According to the Rules of Civil Procedure, the joinder of defendants charged in separate informations is appropriate as follows:

**Rule 582. Joinder – Trial of Separate Indictments of Informations**

(A) Standards
***
(2) Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Pa.R.Crim.P. 582(A)(2). The defendant "bears the burden of proving that he was prejudiced by the decision not to sever, and he must show real potential for prejudice rather than mere speculation." *Commonwealth v. Rivera, 111* A.2d 131, 137 (Pa. 2001). Joint trials are favored when judicial economy will be served by avoiding the expensive and time-consuming duplication of evidence, and where the defendants are charged with conspiracy." *Commonwealth v. Birdsong*, 24 A.3d 319, 336 (Pa. 2011). The Court must balance the need to minimize potential prejudice against the general policy of encouraging judicial economy. *Commonwealth v. Janda*, 14 A.3d 147, 155-56 (Pa. Super. 2011).

Here, the defendants were charged with conspiracy and, as discussed at length above, there was a quantity of evidence against Appellant, as well as his co-defendant. There was no abuse of discretion to economize court and witness resources here since the same circumstances gave rise to the charges against both co-conspirators. Not only is the narrative common to both co-defendants, but the fact finder was undoubtedly aided in its understanding by hearing the full story of the string of burglaries and both men's involvement.

The great majority of the evidence presented at trial was certainly relevant to both defendants, who were present together at each burglary. Appellant points to no specific evidence that would have been inadmissible in an independent trial. However, even if such evidence exists, Appellant would have to show "real potential for prejudice, rather than mere speculation." *Commonwealth v. Rivera*, 773 A.2d 131, 137(Pa. 2001). In this case, the evidence was not so

28

complex that it would have rendered the jury incapable of separating the evidence against one defendant or the other. The bottom line, however, is that these two men were joined at the hip in committing the string of robberies in this case. Appellant was not prejudiced by the evidence pertaining to Walter Sterling, because much of that evidence was relevant to him as well, both individually and under the theory of conspiracy liability.

## III. CONCLUSION

Based on the above, this Court respectfully requests that Appellant's judgment of sentence be affirmed. The Clerk of Court is hereby directed to submit the record to the Pennsylvania Superior Court for its review.

BY THE COURT:



_____ J.
John Garhart, Judge

cc:   District Attorney's Office
      Michael Harmon, Esq.